IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCELL WILLIS,

    Plaintiff,                        No. 2:10-cv-1631 KJM GGH P

    vs.

FOLSOM STATE PRISON
MEDICAL STAFF, et al.,              ORDER &

    Defendants.               FINDINGS AND RECOMMENDATIONS

                               /

         Plaintiff is a prisoner proceeding pro se who seeks relief pursuant to 42 U.S.C. § 1983. Defendants Lee, O'Laughlin, Vasquez, Casey, Hayward,[1] Dochow and Curry, filed their answer on April 21, 2011, while defendant Damiano, filed his answer on January 24, 2012. This court's review of the docket indicates defendant Johnston does not appear to have filed a timely response; therefore, the court will direct defendant Johnston, who filed an executed waiver of service on April 18, 2011, to show cause why he/she should not be found to be in default. Pending before the court is defendants' motion for dismissal or partial dismissal for failure to

---

[1] Although defendant "Hayward" was identified as "Howard" in the answer, this appears to be a typographical error, as in other documents presented by defendants' counsel, as well as plaintiff's filings, he is identified as "Hayward."

1  exhaust administrative remedies, pursuant to non-enumerated Rule 12(b) of the Federal Rules of
2  Civil Procedure, filed on February 27, 2012, to which plaintiff filed his opposition on March 1,
3  2012.  Subsequently, although plaintiff had previously been informed of the requirements to
4  oppose a motion to dismiss for failure to exhaust pursuant <u>Wyatt v. Terhune</u>, 315 F.3d 1108,
5  1120 n.14 (9th Cir. 2003), in light of <u>Woods v. Carey</u>, --- F.3d ----, 2012 WL 2626912 (9th Cir.
6  July 6, 2012), plaintiff was again provided <u>Wyatt</u> notice and granted a further opportunity and
7  was granted 21 days to file additional evidentiary submissions.  <u>See</u> <u>Order</u>, filed on July 12,
8  2012.  On July 23, 2012, plaintiff supplemented his opposition in the form of a declaration with
9  attached exhibits.

10 <u>Amended Complaint</u>

11        Plaintiff proceeds in his amended complaint, filed on September 2, 2010,[2] against
12 defendants Sergeant Curry; Correctional Officer (C/O) Douchow [Dochow][3]; C/O Vasquez; CCI
13 Johnston; Appeal Coordinator Casey; Dr. Lee; Registered Nurses Pete [Peter Damiano][4] and
14 Diana O'Laughlin; Captain Hayward.  The amended complaint has been modified by order, filed
15 on March 22, 2011, wherein claims against seven other defendants were dismissed as was any
16 claim of conspiracy against defendants Johnston and Hayward.  As a result of plaintiff's having
17 elected not to take an opportunity to amend to attempt to frame any claim of retaliation, this case
18 proceeds only on plaintiff's claim that defendants were deliberately indifferent to a serious
19 medical condition in violation of the Eighth Amendment, as stated in the <u>Order</u>, filed on October
20 8, 2010, dismissing certain claims and defendants and granting plaintiff leave to amend, as to the
21 remaining defendants "the undersigned finds that plaintiff has framed a somewhat limited but

---

[2] The original complaint was filed on June 28, 2010.

[3] Although plaintiff spelled this defendant's name as "Douchow," defendant's counsel spells it as "Dochow," which spelling the court will adopt.

[4] Plaintiff originally identified this defendant simply as "RN Pete."  After several abortive efforts to serve this inadequately identified individual, he was properly identified as "RN Peter Damiano," has been served, and, as noted, has answered the amended complaint.

colorable Eighth Amendment claim of deliberate indifference to a serious medical condition in his amended complaint." This also signifies there is no colorable claim of racial discrimination upon which this action proceeds.[5]

Plaintiff alleges that he suffered a work-related injury, on August 11, 2008, in the Folsom State Prison (FSP) culinary [area], after which he was "redlined," from August 18, 2008, until November 27, 2008. Defendants Culinary Sergeant Curry, and Correctional Officers (C/O's) Dochow and Vasquez refused to file an injury report for plaintiff, until plaintiff filed an appeal, after which the culinary staff filed the report. Plaintiff was given work restrictions, a chrono and a 128 notice of removal from his job. Although defendant Johnston was made aware of plaintiff's condition, he refused to honor the 128 notice or otherwise consider plaintiff's condition. Defendant Johnston told the culinary staff to give him a 115 Rules Violation report and fire him. Amended Complaint (AC), p. 4.

When plaintiff appealed, defendant Casey (appeal coordinator) told plaintiff he would neither take him out of his job or honor the 128 because he believed plaintiff was "faking." Plaintiff was forced back into the job and, on February 6, 2009, was compelled to pick up cake-filled pans and push hot carts up runways. Following his being found guilty on a 115 for refusing to work, despite the staff's awareness that he "was not physically capable of doing non-light" duties, plaintiff was switched for medical care from his then current doctor to defendants Dr. Lee and RN Pete [Peter Damiano], who refused to provide any medical care beyond pain pills, and stated that they were not going to get involved and believed that plaintiff "'just didn't want to work.'" Plaintiff saw defendant RN O'Laughlin, on Feb. 13, 2009, who told plaintiff that he had to prove he was hurt and that she "'would not grant further medical evaluations.'" Id.

\\\\\

---

[5] The Findings and Recommendations, filed on December 15, 2010, which recommended dismissal from the action of the claims and defendants (which had been dismissed by the Order, filed on October 8, 2010), were adopted by Order, filed on March 22, 2011.

1  On April 13, 2009, plaintiff was placed on C status with his privileges "and date
2  taken" while he continued to be forced to work against his limitations every day.  Plaintiff was
3  given harsher work duties in the breadroom and had to lift bread racks, involving constant
4  bending and standing for long hours.  His injury was re-aggravated, which caused plaintiff to
5  undergo physical therapy and "more lay-ins."  Plaintiff alleges medical staff refused to evaluate
6  him further and that defendant Lee stated on May 4, 2009, "'that it would cost too much money
7  when we can just send you to therapy which we'll have to do anyway.'"  AC, p. 5.

8  Plaintiff spoke with defendant Hayward, but, on March 6, 2009, although aware
9  of his condition and removal order, she refused to honor his documents.  On May 3, 2009,
10 defendant Vasquez kept forcing "plaintiff to do harsh labor without breaks," telling him that
11 "'once you came to prison you no longer have rights.'"  Plaintiff underwent such stress that he
12 developed a heart condition, and had "extremely high blood pressure and heart pains."  He also
13 had to speak to a mental health advisor, is still taking pain pills and still suffers "moderate pain"
14 in his back.  Id.  Plaintiff seeks money damages.  Id., at 3.

15 Motion to Dismiss

16 Exhaustion takes on several meanings in this motion including that the court's
17 resources are often exhausted dealing with this very threshold issue.

18 Defendants seek dismissal or partial dismissal for a failure to exhaust
19 administrative remedies, as follows: as to defendant Dr. Lee and defendants RN Damiano (who
20 filed an answer) and RN O'Laughlin – Appeal Log Nos. FSP-26-09-10288 (did not pursue to
21 second or third level); FSP-26-09-10048 (exhausted but defendant Lee was only the reviewer
22 [but does mention Damiano]); FSP-08-01310 (exh no claim); FSP-09-00345 (does not exh
23 claims against Dochow); FSP-09-00152 (does not exh claims against Hayward and Casey; FSP-
24 09-00323 (does not exh claims of racial discrimination/deliberate indiff by Johnston &
25 Hayward); FSP-09-00286 (does not show exhaustion as to any defendant); FSP-09-00259 (does
26 not exh claims against Vasquez); FSP-08-01215 (withdrawn at first level).

4

1    As clarified above, plaintiff proceeds in this action on claims of deliberate
2 indifference to a serious medical condition in violation of the Eighth Amendment.  Therefore, the
3 only relevant grievances are those which speak to that issue.  That is, it is irrelevant for purposes
4 of determining exhaustion of administrative claims in this modified amended complaint whether
5 or not plaintiff filed or exhausted appeals related to anything other than his claims implicating
6 defendants with respect to how they allegedly dealt with his work-related back injury.  Thus,
7 claims of, inter alia, conspiracy, discrimination and retaliation are not before this court and
8 grievances, exhausted or not, focused on irrelevant administrative appeals will not be addressed.
9 For example, FSP-08-00369, an exhausted grievance which has as its subject plaintiff's protest
10 against a possible out-of-state transfer has no bearing on the case at hand.  MTD, Foston Dec., ¶
11 8, Attachment 2.  The court will address only those exhausted grievances that do bear on the
12 gravamen of the amended complaint.

*Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

14    In a motion to dismiss for failure to exhaust administrative remedies under non-
15 enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of
16 raising and proving the absence of exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.
17 2003).  The parties may go outside the pleadings, submitting affidavits or declarations under
18 penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a
19 record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair
20 notice by Order, filed on January 11, 2011, again by Order, filed on June 23, 2011, and yet again,
21 as noted, in light of Woods v. Carey, --- F.3d ----, 2012 WL 2626912 (9th Cir. July 6, 2012), by
22 Order, filed on July 12, 2012.

23    Should defendants submit declarations and/or other documentation demonstrating
24 an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.
25 Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the
26 complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

5

the court's attention those parts of the complaint upon which plaintiff relies.  If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures.  Therefore, inmates seeking money damages must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages).  The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.  Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

Cir. 2002), but see Rhodes v. Robinson (9th Cir. 2010)(PLRA exhaustion requirement satisfied with respect to new claims within an amended complaint so long as administrative remedies exhausted prior to filing amended complaint).

*Administrative Exhaustion Procedure*

Although as of January 28, 2011, as defendants' Declarant D. Foston, Chief of the CDCR Office of Appeals confirms, the procedures for California prisoners to exhaust administrative remedies have been amended (CAL. CODE REGS. tit.xv, § 3984.7), the procedure in place at the time relevant for this action involved the following steps:  1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections.[6]  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

However, if the subject of the prisoner's complaint is a "staff complaint," such does not proceed through the ususal grievance procedures.  The remedy for such a complaint is that CDCR initiate an investigation.  An inmate can receive no other relief at that time regarding the staff complaint.  Brown v. Valoff, 422 F.2d 926, 937-938 (9th Cir. 2005).  If relief other than what is available for a staff complaint is sought, e.g., to be housed in protective custody, to be single celled, etc., then the regular three-level appeal process must be exhausted as for that relief.  Id at 938.   If on a staff complaint a request is granted or partially granted, i.e., an investigation is ordered, *the inmate has exhausted all available remedies for the staff complaint.*  Id. at 937-938.[7]

---

[6] MTD, Foston Dec., ¶¶ 1,3-4.

[7] The reason why a staff complaint grievance might only be partially granted when an investigation is ordered, is that prisoners quite often ask for a specific punishment to be awarded as a part of the grievance.  In no case may a prisoner be awarded specific punishment to be meted out to staff for staff misconduct – such is a remedy that is never available to the prisoner – only CDCR in its role as the staff disciplinary authority.  In other  words, the prisoner has no standing to seek a specific punishment.

If misconduct on the part of staff is found, only CDCR has the authority to impose punishment, i.e., an inmate does not proceed in an adversarial fashion to determine the punishment. If the charge of misconduct is not sustained, the matter ends. Thus, for allegations of staff misconduct, there is nothing a prisoner can do in either event past being awarded an investigation "remedy." "[D]efendant Ayers contends plaintiff has not exhausted his grievance because he did not specifically name defendant Ayers in the grievance. [] This contention is specious since 'exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances.'" Henderson v. Ayers, 476 F. Supp.2d 1168, 1172 (C.D. Cal. 2007), quoting Jones v. Bock, 127 S.Ct. [910]at 923 [2007].

In addition, the Ninth Circuit has found that improper screening may excuse an inmate's failure to satisfy the PLRA exhaustion requirement. Sapp v. Kimbrell, 623 F.3d 813, 817 (9th Cir. 2010).

> A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The California regulations require only that an inmate "describe the problem and the action requested." Cal.Code Regs. tit. 15, § 3084.2(a). Where ... a prison's regulations are "incomplete as to the factual specificity [required in an inmate's grievance], a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir.2009) (internal quotation marks omitted).

Sapp, 623 F.3d at 824.

*Discussion*

Declarant L. Zamora, Chief of the Office of Third Level Appeals-Health Care for California Correctional Health Care Services, makes clear that since August of 2008, inmate appeals which involve only medical issues have been processed through that office, where they are logged into a computer database, which tracks prisoner appeals accepted and adjudicated at the third level by the Office of Third-Level Health Care Appeals. See Declaration of L. Zamora

in Support of MTD.  Also tracked are appeals that were received but screened-out as are the reasons for an appeal screen-out.  Id.

       Defendants concede that plaintiff's appeal, log no. FSP-09-10048 was exhausted through the third level.  MTD, p. 2, Zamora Dec. ¶¶ 4-5, Attachment 2.[8]  In this appeal, accepted, on January 16, 2009, by health care appeals, and denied at the third level on February 23, 2010, plaintiff complains of a serious work-related back injury the "Folsom Administration and medical staff" are failing to have properly "evaluated by a specialist of full screening."  He claims that an "M.R.I. is necessary" to adequately [diagnose] his condition.[9]  Plaintiff claims to have observed the appeals coordinator after his interview contact medical staff on Dec. 31, 2008; plaintiff's accommodation request was denied and the coordinator asked plaintiff who his doctor was.  Plaintiff states that the medical staff on a number of occasions had stated his injury was a possible pinched nerve, but were no longer addressing the issue because, plaintiff believed, they had "decided to aid administration."  He also identifies an RN named "Pete" [defendant Damiano] as having intervened in plaintiff's appointment, telling the doctor what medical aid to give and not to give plaintiff and ushered plaintiff out his appointment "vigorously," saying he needed to discuss other inmate files, while plaintiff was still trying to garner information about "uncertainties concerning [his] injury."  He concludes the appeal by saying that "they" will "continue denying lay-ins, and giving me medicine that does not work" and that "something is wrong" with his lower back.  (Although the first level partial grant had apparently resulted in defendant Lee having granted the lay-in request but denied the MRI, plaintiff's response was that he never received the lay-in and that defendant Lee was not properly documenting his medical condition for a diagnosis).  He states that his "pain has increased daily and medical staff

---

[8] Declarant Zamora cites attachment 1 as the log of plaintiff's appeal, log no. FSP-26-09-10048, but it is located at attachment 2.

[9] His claims that "they only discriminate against black inmates," referencing medical requests, as well as vague references to "property" and "transfer," are not germane to this action. MTD, Zamora Dec., Attachment 2.

continues to do nothing about it except continue to let me suffer." MTD, Zamora Dec., Attachment 2, pp. 3-4.

In the third or director's level appeal denial, the issue was framed as follows:

> Your CDC 602 indicated you feel random shocks in your back and legs sometimes go to sleep following an injury August 11, 2008. You state Tylenol is ineffective at controlling your pain. You feel your request for MRI or CT was inappropriately denied, a lay-in request was inappropriately denied, and a staff conspiracy has led to inadequate medical care.
>
> You requested to receive an MRI or CT and all other examination and treatment for your back injury, and to receive a lay-in for therapeutic reasons.

MTD, Zamora Dec., Attachment 2, p. 1.

Under "Basis for Director's Level Decision," the following is set forth:

> At the Director's Level of Review, submitted on April 20, 2009, you stated you have a serious back injury, your medical rights are being violated, an MRI is necessary, they only discriminate against black inmates, and submitting 7362's will not provide further care and they will continue to deny lay-ins and give you medicine that does not work.
>
> At the DLR, your appeal file and documents obtained from your Unit Health Record (UHR) were reviewed by licensed clinical staff who determined your care related to your appeal issues was adequate as you received medical treatment and medication was provided.
>
> After review, there is no compelling evidence that warrants intervention at the Director's Level of Review as your medical condition has been evaluated by licensed clinical staff and you are receiving treatment deemed medically necessary.

Id., at 2.

Based on the allegations of the complaint, the court finds that plaintiff's claims, such as they are, against two of the medical staff defendants, Dr. Lee and RN Damiano, have been adequately administratively exhausted. The court does not find persuasive defendants' argument that plaintiff failed to exhaust his claims against defendant Lee because defendant Lee

\\\\\

conducted the first level appeal interview with him as part of the appeal process[10] and because plaintiff does not have a constitutional right to grievance process, he frames no claim. MTD, p. 3.

While it is true that prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure," Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) and that even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns, Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), that is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made can never be liable under a ratification theory. In this instance, plaintiff alleges that defendant Lee failed to provide him adequate medical treatment for his work-related injury and his claims regarding deficient medical treatment for that condition are all implicated in plaintiff's exhausted grievance. Nor is defendant Damiano, who defense counsel acknowledges is referenced in the grievance to the third level, and defendant Lee who is specifically named in his first level appeal response as having failed to provide the lay-in he had apparently granted plaintiff, able to effectively argue administrative remedies of claims against him are not exhausted. The Supreme Court has made clear that what is required to exhaust a prison's administrative grievance process is the level of detail a prison procedure requires for exhaustion of a particular system or claim. Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 923 (2007) (court's imposition of a requirement of naming a particular official in a grievance is unwarranted where prison procedure does not mention it); Griffin v. Arpaio, 557 F. 3d 1117, 1120 (9th Cir. 2009) ("the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."). Here, plaintiff's

---

[10] According to defendants records, defendant Lee granted plaintiff's request for a medical lay-in, but denied the request for an MRI or CT scan. MTD, p. 2, citing Zamora Dec. ¶¶ 2, 4-6, Attachment [2]. However, in his second level appeal, plaintiff states flatly that defendant Lee gave him a lay-in. Id., at Attachment 2, pp. 1, 3.

exhausted grievance provides the basis for the gravamen of his amended complaint as to the medical treatment he received with respect to his injury, or lack thereof, and does not militate for a finding of a failure to exhaust administratively as to defendants Lee and Damiano. However, as to defendant O'Laughlin, reference to the amended complaint makes clear that plaintiff raises a claim against her arising from a specific alleged encounter, on Feb. 13, 2009. As FSP-09-10048 was accepted at the first level prior to that date, on the face of it, plaintiff could not have exhausted his administrative grievance as to that defendant. Therefore, the court will recommend dismissal of plaintiff's claim against defendant O'Laughlin as unexhausted.

As to defendants Curry, Dochow and Vasquez, specifically referencing appeal log no. FSP-08-01310, filed on October 11, 2008, defendants contend that plaintiff failed to exhaust his administrative remedies as to his claims against them, while conceding this grievance was exhausted through the third level with a denial. MTD, pp. 2-3, citing Declaration of L. Ostrom, an Appeals Coordinator employed by CDCR at Folsom State Prison, ¶¶ [1], 2, 6, 14, Attachment [10].[11] Defendants' principal argument as to this grievance is that it was filed on Oct. 11, 2008, which was before the date plaintiff returned to his culinary job in accordance with his own allegations, which would have been on or after November 27, 2009, i.e., plaintiff claims to have been "red-lined" from his job from August 18, 2008, until November 27, 2008. In other words, in addition to failing to name these defendants in his grievance, plaintiff was premature in filing the grievance inasmuch as it would appear to have been filed before his complaints against them could have arisen.

The issue, as framed with respect to FSP-08-01310, as logged in the inmate appeals computerized tracking system, was: "[p]laintiff claims due to back injury he cannot work in culinary and he is experiencing hostile work environments;" it is logged as received on December 31, 2008, and as "[p]artially granted at lower level of review." Id., Ostrom Dec., ¶ 6.

---

[11] Defendants have misidentified this appeal as located at Attachment 14 to the Ostrom Dec.

This appeal, as defendants observe, was initiated on Oct. 11, 2008, as a reasonable accommodation request, describing plaintiff's disability as: "[l]ower back injury. Unable to stand for long periods, lift more than 10 lbs. and bend frequently." MTD, p. 5, Ostrom Dec., Attachment 10. As verification, plaintiff offered the following: "Injury report, CDC 7410 med. chrono, and medical notes/charts which state I have constant pain, shocks through back and legs, and legs go to sleep when standing too long. Med. chrono is good for 1 year, to place me on light duty assignment." In describing the problem, plaintiff stated:

> Staff in culinary continues to try and force me to work in hostile environment and endanger my health. If [sic] asked to be removed, I have provided adequate documentation also. Plus I had verbal confrontation with Sgt. and other C/O in culinary because of my injury w/arm [?]. Now [?] they claim to try and accommodate me with the same job line server which I was injured under.[12]

MTD, Ostrom Dec., Attachment 10, p. 2. The specific modification sought is a "[r]equest to be placed in a light duty assignment and taken out of culinary[.]" Id.

Defendants also contend that grievance FSP-26-09-10288, filed on March 18, 2009, which also began as an ADA reasonable accommodation request, could not exhaust plaintiff's claims as to any defendants because it did not proceed past the first formal level. MTD, p. 2, citing Foston Dec. ¶¶ 7, 9-18; Ostrom Dec., ¶¶ 2, 6-18; Zamora Dec. ¶¶ 2, 4-6. This grievance is at Attachment 2 to the declaration of K. Stocker, Folsom State Prison's Health Care Appeals Coordinator. In the March 18, 2009, request for accommodation that became FSP-26-09-10288, plaintiff references an updated chrono (of which a copy is included) stating plaintiff, due to an acute back injury, cannot stand, bend or stoop for extended periods and cannot lift more than 20 pounds. That chrono is dated February 19, 2009. An earlier chrono, dated December 1, 2008, had stated that plaintiff "should not be assigned to a job requiring frequent bending and

---

[12] The undersigned has attempted to produce exactly what was written but bracketed question marks are inserted to indicate where it is the court's best effort to transpose the writing, which is not entirely clear.

should not lift more than 20 lbs." In his request, plaintiff states that staff have continued to violate the chrono (evidently the earlier one, given the date that he references) which aggravated his injury, causing him to need a lay-in on Feb. 6, 2009, although he was forced to go back to work and on Feb. 8, 2009, was ordered to bend and pick up pots and pans frequently, and on Feb. 10, 2009, was ordered to lift cake-filled pans and bread racks weighing more than 20 lbs. Plaintiff asks to be removed from a hostile work environment and re-assigned away from culinary duty. Plaintiff claims to have filed an appeal on Feb. 13, 2009, to which he had not received a response for 33 days, about being forced to sit stooped and complains of the culinary staff's "animosity." MTD, Stocker Dec., Attachment 2.

It appears that at first, this appeal was rejected as a duplicate of ADA-FSP-08-01310, noted as completed to the second level as of January 13, 2009. Id., Attachment 2, screening form dated March 23, 2009. In an Inmate Request for Interview to "Warden," dated March 25, 2009, plaintiff claimed an appeals coordinator, unidentified on the form, was violating inmates' Fourteenth Amendment due process rights by rejecting the appeal as a duplicate of FSP-08-01310. Plaintiff states that FSP-08-01310 was filed "to prevent violation of medical chrono before I returned to work" and states that the rejected grievance concerned an updated chrono "concerning extending standing an[d] stooping" not addressed in FSP-08-01310, and accuses the appeals coordinator of being deceptive in rejecting the appeal for "false" reasons "to delay action." MTD, Stocker Dec., Attachment 2; plaintiff's declaration, filed post-Woods in opposition, attached at pp. 21-22.

Nevertheless, there was ultimately a first-level appeal response to FSP-26-09-10288, dated May 7, 2009, wherein it is noted that plaintiff saw defendant Lee on May 4, 2009, that the inmate appeals coordinator spoke with plaintiff's culinary supervisor, on March 23, 2009, and found that plaintiff had been assigned light duty and that the appeal had been determined to be a medical, and not an ADA, issue. The appeal was denied and plaintiff was told he could submit it for a second level review within 15 days. MTD, Stocker Dec.,

Attachment 2.  Defendants, as noted, have indicated there was no second or third level appeal.

In his opposition, plaintiff simply states that his claims have been presented at the third level "and because of deceptive tactics, screen outs, or lost [sic] they were not honored though they did make it to the third level and those that weren't none [sic] was relief granted." Opposition (Opp.), p. 3.  Plaintiff also states generally (and somewhat irrelevantly) that he went beyond the administrative remedies procedure, appealing directly to the chief deputy warden by way of the prison ombudsman, to I.A.B.,[13] to the Inspector General and to the medical records office. Id., at 3-4.  It is unclear whether plaintiff is saying as to certain claims, where relief was granted at a lower level, he did not proceed to the third level but was not actually given the relief at the lower level or whether he is saying that all of his claims did proceed to the third level, even when relief was granted at the lower level, which he says never materialized, which appears to be the case in his grievance FSP-08-01310.  In any event, as to FSP-26-09-10288, although it eventually received a first-level appeal denial after having been screened-out as duplicative, it could certainly have led to confusion by plaintiff as he had already been told it was duplicative of FSP-08-01310, even if that grievance was initiated preemptively before his actual initial return to work post-injury.  Nevertheless, FSP-08-01310 was exhausted by Feb. 6, 2009, some time before plaintiff finally did receive a first-level appeal response to FSP-26-09-10288, on May 7, 2009, MTD, Ostrom Dec., Attachment 10; Stocker Dec., Attachment 2.  Therefore, if that were all there were to show plaintiff's exhaustion of his claims as to these defendants, it would be deficient if the exhausted claims could be deemed premature and the later claims found, in essence, abandoned.

However, in appeal no. FSP-09-00259, which was exhausted through the third level, as defendants concede, MTD, p. 5, citing Ostrom Dec., ¶¶ 6, 11,[14] Attachment [7], while

---

[13] It is unclear here whether plaintiff is referring to the Inmate Appeals Branch or Internal Affairs.

[14] Incorrectly identifies appeal log FSP-09-00259 as located at Attachment 6, instead of 7.

15

plaintiff makes a number of claims irrelevant to this action, he also stated, specifically, that defendants Curry and Dochow continued to violate his Eighth Amendment rights and that staff had continued to disregard his health concerns and chrono, since his return to work on March 20, 2009. He also references defendants Curry and Vasquez as discussing firing him, as observed by others and states that defendant Curry orders plaintiff to stand and "line serve vegetables," violating his medical chrono and that "staff" contines to, inter alia, to subject him to acts of deliberate indifference to his injury, aggravating it. MTD, Ostrom Dec. Attachment 7. Nor do defendants cite authority for the proposition that plaintiff must name each individual; it is enough to provide identification of the culinary staff. Defendants Curry, Dochow and Vasquez do not deny that they comprised the culinary staff plaintiff was referencing.[15] The undersigned finds that defendants' motion as to these defendants should be denied.

As to defendant Johnston, the court cannot consider the motion as to this defendant because, on the face of it, defendant Johnston appears to be in default.

With respect to defendant Casey, this defendant contends that no grievance was ever brought with respect to him/her. MTD, p. 3, citing Foston Dec. and Attachments, Zamora Dec. and Attachment, Stocker Dec. and Attachment, Ostrom Dec. and Attachments.

In his supplemental declaration (in opposition), filed post Woods notice, plaintiff includes copies of correspondence he received, dated May 26, 2009, and June 22, 2010, from the Office of the Inspector General, encouraging plaintiff to exhaust the formal prison administrative process, and from two law firms, one dated January 22, 2009, and one dated February 20, 2009, indicating they would not be representing him, none of which speaks expressly to the question of whether plaintiff did exhaust his claims administratively. He also includes copies of various requests for interviews, as well as a notice of classification hearing, summarized below, at least some of which may have been pulled off of exhibits provided by defendants, in chronological

---

[15] Defendant Curry is identified in the second level appeal response in FSP-08-01310 as the culinary sergeant who was interviewed on Dec. 31, 2008, by defendant Casey.

order (which plaintiff did not employ in his submission).  Plaintiff's Declaration, filed on July 23, 2012, pp. 1-31.

- Inmate Request for Interview to "Appeals," dated April 15, 2009, stating that plaintiff is re-submitting an unidentified "complaint" within fifteen days of the incident and seven working days after April 3, 2009, referring to it as a staff complaint not an appeal of "any issues."  <u>Id.</u>, at 17.

- Inmate Request for Interview to "Appeals," dated June 10, 2009, claiming that his words "whomever authorized these lies to be investigated" had been deleted from the original 602, which he was re-submitting.  The appeal at issue is not identified on the form.  <u>Id.</u>, at 7.

- Inmate request for interview to "Appeals," also dated June 10, 2009, stating that plaintiff had placed names on a form 1858.  "You know who these people are. Their names have been added on 602 form...."  <u>Id.</u>, at 8.

- Inmate request for interview to "Warden," with the month of 2009 not legible stating "C/O Vasquez complaint has been removed from this appeal."  <u>Id.</u>, at 9. An inmate request for interview to "Warden," dated June 14, 2009, asserting that a May 28th, 2009 appeal, not otherwise identified on the form, submitted as an emergency appeal was not submitted within seven working days [of a prior appeal] and that the last appeal had been dated May 19, 2009.   He claims the appeal is being "delayed/rejected" deceptively by the appeals coordinator and that by the applicable rules, an appeal is dated from its submission not from the date it is accepted.  <u>Id.</u>, at 23-24.

- Inmate request for interview to "Warden," also dated June 14, 2009, accusing the appeals coordinator of "misconduct and deception," stating that an appeal is attached (as it is not here), wherein the appeals coordinator is attempting to reject it when plaintiff simply wishes to process it to the second level and maintaining that he has not added to the appeal.  <u>Id.</u>, at 19-20.

- An inmate request for interview from plaintiff, dated June 18, 2009, to "Appeals," referencing an unidentified appeal that evidently had been rejected and stating that he would continue to submit the appeal which he states has been amended per instructions and where he is "solely requesting SLR" [presumably, second level review] of "FLR" [again, presumably, first level review].  Plaintiff claims he has not changed his appeal and that, inter alia, "this issue concerning my acute back injury and being forced to work in that un-safe environment is not going to go away."  <u>Id.</u>, at 13-14.

- An inmate request for interview in 2009 to "Appeals," with the month not visible, stating, in part, that an unidentified "appeal is not being changed," that rejection of the appeal is "clearly a manipulative tactic" and the "corporal punishment" issue of his "being illegally confined to my cell is in Section A concerning Capt[a]in Hayward."  Plaintiff contends he is only trying to proceed to the next level, not to add to or amend the issues.  <u>Id.</u>, at 15-16.

17

- An inmate request for interview, dated June 22, 2009, to "HC Appeals," complaining about an "inaccurate rejection" [of an unidentified appeal] and stating that he had:

  > informed the Federal Receiver, and Sacramento concerning you and Appeals Coordinators' misconduct, manipulating inmates appeals, discrimination and involvement in FSP Administrations['] conspiracy to cause me irreparable harm as you are fully aware of my condition and the fact that this culinary job is not a light duty position and my ADA is being violated. Now, as a co-conspirator, you continue to attempt to violate my U.S. constitutional rights to due process. Once again my appeal is not being changed. I will continue to pursue this matter, and your deceptive tactics will not work. You will now share the responsibility of negligence and deliberate indifference acts, plus reprisal with your fellow conspirators[.] You['re] trying to cover-up/sweep under the rug these violations for. [sic] Id., at 11-12.

- A Notice of Classification Hearing, dated June 29, 2009, signed by an "S. Ettlin, Sr.," a non-party, identified as correctional supervising cook, stating that plaintiff "is currently assigned to PM Culinary in position MKSFX. 351." The notice indicates that plaintiff is to appear before the classification committee "ASAP" and further states:

  > Due to medical condition subject can not meet out expectations for this assignment. Therefore, we request Inmate WILLIS be brought before UCC for program re-evaluation and re-assignment from this department.
  > Please contact Medical Department for specific medical information. Plaintiff's Dec., p. 10.

- Inmate request for interview to "Warden," dated July 7, 2009, claiming the appeals coordinator is continuing to violate his due process rights, referencing a screened out appeal, again unidentified on the form, stating that it "has nothing to do with appeal # 09-00418 because one concerns "R&R" and another refers to a "128 B1." Id., at 25-26.

These insufficiently identified requests for interviews do not necessarily militate for a finding that any claim as to defendant Casey, for example, was improperly screened, under Sapp, supra, especially as defendant Casey maintains that no specific grievance as to him was ever initiated by plaintiff. In appeal no. FSP-09-00152, filed on Feb. 19, 2009, and denied at the third level on June 23, 2009, defendant Casey points out that when plaintiff's grievance against a

\\\\\

\\\\\

Lieutenant Tennyson[16] (previously dismissed as a defendant), for, among other claims, having violated his health care rights, was denied at the first level by defendant Hayward, plaintiff accused her of being a co-conspirator. MTD, p. 4, Ostrom Dec., Attachment 8.[17] When the appeal was only partially granted by Casey at the second level, Casey avers that plaintiff accused him of being a co-conspirator. Id., at 3-4, Ostrom Dec., Attachment 8.[18] No conspiracy claims are proceeding in this action. The court finds as to any Eighth Amendment claim against defendant Casey, plaintiff has not shown proper administrative exhaustion. This defendant should be dismissed.

As to defendant Hayward, this defendant argues that, in Appeal no. FSP-09-00323, filed on April 15, 2009, and denied at the third level on October 13, 2009, plaintiff's grievance against her involved an alleged conspiracy between her and defendant Johnston and that the "real complaint" alleged against Hayward is that this defendant ordered plaintiff confined to quarters for his failure to work at his assigned job. MTD, pp. 4-5, 7, Ostrom Dec., ¶¶ 6, 9, Attachment [5],[19] Foston Dec., ¶¶ 7, 18, Attachment 9. To the extent that plaintiff makes allegations of conspiracy, claims which this court has previously dismissed from the amended complaint, whether plaintiff exhausted such claims is irrelevant. However, as part of the first level appeal, plaintiff does assert that these defendants had failed to do anything with respect to his medical concerns, despite being notified, and that his new chrono is not being honored by them. See Ostrom Dec., Attachment 5. While plaintiff does object in the appeal to being confined to his cell by defendant Hayward, he also explicitly states in his first level appeal response that his working in his culinary job "violates my medical limitations and is causing

---

[16] Lt. Tennyson (spelled "Tennison" by plaintiff) was previously dismissed as a defendant.

[17] Misnumbered at Attachment 7 by defendants.

[18] Misnumbered at Attachment 7 by defendants.

[19] Misnumbered by defendants as Attachment 4 to the Ostrom Dec.

irreparable harm to my acute back injury." Id.  The court finds that plaintiff has sufficiently administratively exhausted his Eighth Amendment claim against defendant Hayward.

Accordingly, IT IS ORDERED that defendant Johnston show cause within fourteen days why he should not be found to be in default for failing to respond timely to the amended complaint.

IT IS RECOMMENDED that:

1. Defendants' motion to dismiss for failure to exhaust administrative remedies, filed on February 27, 2012 (docket # 46) be granted in part and denied in part as follows: GRANTED as to defendants O'Laughlin and Casey; and DENIED as to defendants Lee, Vasquez, Hayward, Dochow, Curry and Damiano; and

2. This matter proceed to trial as to the remaining defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
will1631.mtd