1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  MARCELL WILLIS,                           No.  2:10-cv-1631 KJM AC P

12              Plaintiff,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14  FOLSOM STATE PRISON MEDICAL
    STAFF, et al.,
15

16              Defendants.

17

18          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S. § 1983.

19  Pending before the court is defendants' motion for summary judgment.  ECF No. 67.  Plaintiff

20  has opposed the motion and defendants have submitted a reply.  ECF Nos. 73, 74.

21                              AMENDED COMPLAINT

22          Plaintiff proceeds on a verified first amended complaint filed on September 2, 2010 (ECF

23  No. 11), which has since been modified by orders dismissing nine of the defendants and a claim

24  of conspiracy.  See ECF Nos. 22, 55.  The case continues solely on "a somewhat limited but

25  colorable Eighth Amendment claim of deliberate indifference to a serious medical condition . . ."

26  against seven defendants: Sergeant Curry, Correctional Officer (CO) Dochow, CO Vasquez, CCI

27  Johnston, Dr. Lee, Registered Nurse Peter Damiano, and Captain Hayward.  See ECF No. 12 at 3;

28  ECF No. 51 at 2-3; ECF No. 55.

1

Plaintiff alleges that he suffered a work-related injury on August 11, 2008, in the Folsom State Prison (FSP) culinary area, after which he was "redlined" from August 18, 2008 until November 27, 2008.  Defendants Culinary Sergeant Curry and Correctional Officers Dochow and Vasquez refused to file an injury report for plaintiff until he filed an appeal, after which the culinary staff filed the report.  Plaintiff was given work restrictions, a chrono, and a 128 notice of removal from his job.  Although defendant Johnston was made aware of plaintiff's condition, he refused to honor the 128 notice or otherwise consider plaintiff's condition.  Defendant Johnston told the culinary staff to give plaintiff a 115 Rules Violation Report (RVR) and fire him.  First Amended Complaint (FAC), p. 4.

When plaintiff appealed, he was forced back into the job.  On February 6, 2009, plaintiff was compelled to pick up cake-filled pans and push hot carts up runways.  He was found guilty of the RVR for refusing to work, despite the staff's awareness that he "was not physically capable of doing non-light" duties.  Plaintiff was then switched from his previous medical provider to defendants Dr. Lee and RN Damiano, who refused to provide any medical care beyond pain pills.  Dr. Lee and RN Damiano stated that they were not going to get involved in the workplace dispute and believed that plaintiff "'just didn't want to work.'"  Plaintiff spoke with defendant Hayward, but on March 6, 2009 she refused to honor his documents although she was aware of his condition and removal order.

On April 13, 2009 plaintiff was placed on C status with his privileges "and date taken," while he was forced to work every day without regard for his limitations.  Plaintiff was given harsher work duties in the breadroom and had to lift bread racks, which involved constant bending and standing for long hours.  On May 3, 2009, defendant Vasquez kept forcing "plaintiff to do harsh labor without breaks," telling him that "'once you came to prison you no longer have rights.'"  Plaintiff's injury was re-aggravated, which caused him to undergo physical therapy and "more lay-ins."  Plaintiff alleges that medical staff refused to evaluate him further and that defendant Lee stated on May 4, 2009 "'that it would cost too much money when we can just send you to therapy which we'll have to do anyway.'"  FAC, p. 5.

Plaintiff experienced such stress that he developed a heart condition, and had "extremely

2

1  high blood pressure and heart pains."  He also had to speak to a mental health advisor, is still

2  taking pain pills, and still suffers "moderate pain" in his back.  Id.

3  MOTION FOR SUMMARY JUDGMENT

4  Defendants move for summary judgment, contending that (1) they are entitled to judgment

5  as a matter of law; and (2) they are entitled to qualified immunity.  ECF No. 67.

6  I. Legal Standard for Rule 56 Motions

7  Summary judgment is appropriate when the moving party "shows that there is no genuine

8  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

9  Fed.R.Civ.P. 56(a).

10  Under summary judgment practice, the moving party "initially bears the burden of

11  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

12  627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

13  The moving party may accomplish this by "citing to particular parts of materials in the record,

14  including depositions, documents, electronically stored information, affidavits or declarations,

15  stipulations (including those made for purposes of the motion only), admission, interrogatory

16  answers, or other materials" or by showing that such materials "do not establish the absence or

17  presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

18  support the fact."  Fed.R.Civ.P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

19  of proof at trial, "the moving party need only prove that there is an absence of evidence to support

20  the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see

21  also Fed.R.Civ.P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after adequate time

22  for discovery and upon motion, against a party who fails to make a showing sufficient to establish

23  the existence of an element essential to that party's case, and on which that party will bear the

24  burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning

25  an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

26  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before

27  the district court demonstrates that the standard for entry of summary judgment . . . is satisfied."

28  Id. at 323.

3

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

3    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

4    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

5    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

6    admissible discovery material, in support of its contention that the dispute exists.  See

7    Fed.R.Civ.P. 56(c)(1); Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate

8    that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

9    the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

10    Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the

11    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

12    nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13    In the endeavor to establish the existence of a factual dispute, the opposing party need not

14    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16    trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

17    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' "

18    Matsushita, 475 U.S. at 587 (citations omitted).

19    "In evaluating the evidence to determine whether there is a genuine issue of fact," the

20    court draws "all reasonable inferences supported by the evidence in favor of the non-moving

21    party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

22    the opposing party's obligation to produce a factual predicate from which the inference may be

23    drawn.  See Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244–45 (E.D.Cal. 1985), aff'd,

24    810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party

25    "must do more than simply show that there is some metaphysical doubt as to the material facts....

26    Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

27    party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

28    In applying these rules, district courts must "construe liberally motion papers and

4

pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."

Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.2010).  Plaintiff has been provided notice of the

requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure,

as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), Klingele v.

Eikenberry, 849 F.2d 409 (9th Cir. 1988), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

ECF Nos. 19, 67.

      II.      Status of the Record on the Motion

      Defendants point out in their reply that plaintiff's opposition fails to comply with the rules

governing summary judgment motions.  ECF No. 74 at 2-3.  Plaintiff's opposition memorandum

is composed of vehement, scattershot denials of the evidence produced by defendants, without

specific citation to the evidentiary record in support of his position.  Plaintiff has indeed failed to

comply with Fed. R. Civ. P. 56(c)(1)(A),[1] and with Local Rule 260(b) which requires a party

opposing a motion for summary judgment, to

> . . . reproduce the itemized facts in the Statement of Undisputed
> Facts and admit those facts that are undisputed and deny those that
> are disputed, including with each denial a citation to the particular
> portions of any pleading, affidavit, deposition, interrogatory
> answer, admission, or other document relied upon in support of that
> denial.

Moreover, to the extent that plaintiff has produced his own Statement of Disputed Facts

identifying "all additional material facts as to which there is a genuine issue precluding summary

judgment," he fails to cite to "the source thereof in the record."  L.R. 260(b).  He has also

neglected to provide the evidentiary documents to which he makes general references.

      Defendants are correct that it is not the duty of this court "'to comb the record to find

some reason to deny a motion for summary judgment. . . .'"  ECF No. 74  at 3 (citing Carmen v.

San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029-31 (9th Cir. 2001)) (quoting Fosberg v.

---

[1] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents,
electronically stored information, affidavits or declarations, stipulations (including those made for
purposes of the motion only), admissions, interrogatory answers, or other materials. . ."

1    Pacific Northwest Bell Telephone Co., 840 F.2d 1409, 1419 (9th Cir. 1988)).  On the other hand,

2    this court has an obligation to protect the rights of a pro se plaintiff.  The court will not summarily

3    reject the opposition as defendants' request.  See ECF No. 74 at 2-3.  To prevent against any

4    miscarriage of justice, the court has reviewed the exhibits attached to the original complaint and

5    the entirety of plaintiff's deposition as well as the papers filed in relation to the motion.[2]

6              III.      Eighth Amendment Inadequate Medical Care Claim

7         In order to state a §1983 claim for violation of the Eighth Amendment based on

8    inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

9    deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

10   To prevail, plaintiff must show both that his medical needs were objectively serious, and that

11   defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299

12   (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of

13   mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5

14   (1992).

15         A serious medical need exists if the failure to treat a prisoner's condition could result in

16   further significant injury or the unnecessary and wanton infliction of pain.  Indications that a

17   prisoner has a serious need for medical treatment are the following: the existence of an injury that

18   a reasonable doctor or patient would find important and worthy of comment or treatment; the

19   presence of a medical condition that significantly affects an individual's daily activities; or the

20   existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-

21   41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).

22   McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX

23   Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

24         In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very

25   demanding standard for "deliberate indifference."  Negligence is insufficient.  Farmer, 511 U.S.

26

---

27   [2] Under Fed. R. Civ. P. 56(c)(3), although "[t]he court need consider only the cited materials . . .
it may consider other materials in the record."

28

at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation.  Id. at 836-37.  It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842.  Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added).

A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to *competently* treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.  Id.  However, mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  In cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).

A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant."  McGuckin, 974 F.2d at 1061.

    A. Defendants Damiano and Lee

       1. Overview of the Claim

Plaintiff alleges that he was removed from the care of his previous provider and reassigned to defendants Dr. Lee and RN Damiano, who did not provide treatment for his back injury beyond pain pills, refused an MRI on grounds that it would be too costly, and stated that they were not going to get involved in the dispute about workplace accommodation because they

believed that plaintiff "'just didn't want to work.'"   AC, ECF No. 11 at 4-5.  Defendants by their motion counter that the record demonstrates plaintiff received appropriate medical care on a regular basis.  Points and Authorities in Support of defendants' Motion for Summary Judgment (MSJ), ECF No. 67-1 at 6, 9-11, 16-24, 35-37.

    2.   Facts

        The following facts are undisputed unless otherwise specified:

- Plaintiff was incarcerated at Folsom State Prison (FSP) during the time relevant for this action.

- Plaintiff suffered an injury to his lower back on August 11, 2008 while working in the FSP culinary area when he slipped on a wet floor and fell while trying to get down for an alarm without waterproof work boots.  First Amended Complaint, ECF No. 11 at 3-4; plaintiff's Lodged Deposition at 47-49, 65-66, 146.

- Defendant P. Damiano, retired since December 30, 2011, was a registered nurse (RN) employed by the California Dept. of Corrections and Rehabilitation (CDCR) for the relevant period at FSP.  RN Damiano's duties included reviewing sick call requests submitted by an inmate, examining the inmate, reviewing his medical records, obtaining an inmate's vital signs and discussing his health care concerns.  MSJ, Damiano Declaration, ECF No. 67-3 at ¶¶ 1-3.

- Following examination and discussion, defendant Damiano declares that if an inmate's condition warrants medication, he (Damiano) would confer with a medical doctor and draft an order for medication which the doctor would review and sign if the doctor agreed with Damiano's evaluation for medication.  If he or she did not, the medical doctor would examine the inmate.  MSJ, Damiano Decl. ¶ 4.

- If following his meeting with the inmate, defendant Damiano believed the condition was severe enough, he declares he would refer the patient to the doctor's line for consultation and examination by the medical doctor, at which point, the doctor could order further tests and conduct his [or her] own evaluation and prescribe medications.  MSJ, Damiano Dec. ¶ 5.

- Defendant Damiano, as an RN, was not authorized or licensed to dispense drugs, even over the counter drugs such as Tylenol or ibuprofen, and could only pre-write an order for medication which a medical doctor would have to review and sign and which would then be delivered to the pharmacy to be filled. MSJ, Damiano Decl. ¶ 6.

- Defendant Damiano was not authorized or licensed to make a diagnosis and could only make an assessment upon his initial evaluation of a patient and provide that assessment to a medical doctor for his or her final review.  MSJ, Damiano Decl. ¶ 7.

- The record demonstrates that defendant RN Damiano had four encounters with plaintiff, two of which preceded the incident at issue.  MSJ, Damiano Decl. ¶ 8, 13, ECF No. 72, sealed, Exs. A, B, D, J.

        1. In a physician's order form, dated August 3, 2007, showing a prescription for an unrelated medical condition for plaintiff (apparently ordered by a physician), defendant Damiano has

8

included a note with his signature.  Defendant Damiano declares that he examined plaintiff on that date for an unrelated medical condition.  MSJ, Damiano Dec. ¶ 9, ECF No. 72 (plaintiff's medical records) sealed, Ex A.

2. Another physician's order form, dated February 5, 2008, shows a notation by defendant Damiano regarding his having examined plaintiff for an unrelated medical condition.  Damiano Decl. ¶ 10, ECF No. 72, sealed, Ex. B.

3. A health care services request form submitted by plaintiff on October 22, 2008, shows that plaintiff sought medication for unrelated conditions but that on October 24, 2008, when defendant Damiano saw plaintiff, plaintiff also complained of pain in his right side when he bent or did "burpees."  Defendant Damiano advised plaintiff not to do any burpees or back exercises, referring him to a doctor for all of his medical concerns.  The report also indicates plaintiff verbalized his understanding of the instructions.  MSJ, Damiano Dec. ¶ 11, ECF No. 72, sealed, Ex. D.

4. On a December 8, 2008, interdisciplinary progress notes sheet, defendant Damiano indicates that plaintiff, seeking assistance for another condition, stated that he had back pain, that the lower right side of his back still hurt and that "the Ibuprofen don't work." Defendant Damiano noted that plaintiff was "very talkative," "showed no facial grimacing," and "ambulates with a steady gait." It is indicated that plaintiff is to see an M.D. and that defendant Damiano advised him to bend using his knees to which plaintiff verbalized his understanding.  MSJ, Damiano Dec. ¶ 12. ECF No. 72, sealed, Ex. J.

- Defendant B. Lee, a board-certified internist, has been employed as a physician at FSP since 2005 and was assigned to Building 5 from April 1, 2008 to February 8, 2012. Defendant Lee has treated injuries for more than thirty years, including back injuries. Defendant Lee met with plaintiff in the Building 5 medical clinic eight (8) times between August 11, 2008, when he injured his back, until September 10, 2009 for medical evaluations.  He also answered two grievances regarding plaintiff's medical care an additional two (2) times and, in response to nurse requests, adjusted plaintiff's medications and ordered as well as reviewed diagnostic testing of plaintiff several times. Defendant Lee treated plaintiff for his back as well as various medical conditions unrelated to his low back pain.  MSJ, Lee Declaration, ECF No. 67-8 at ¶ 1, 4.

- When an inmate complains of injury or in some way requires an accommodation at the prison due to a medical condition, a medical provider (physician, NP, or physician's assistant [PA]) will examine the inmate and if appropriate, issue a Comprehensive Accommodation Chrono. The medical provider is to indicate whether the condition is permanent or temporary and, if temporary, when the accommodation expires.  All Comprehensive Accommodation Chronos must be reviewed annually even for permanent accommodations, and renewed for up to one year, if appropriate.  MSJ, Lee Dec. ¶ 8.

- There were three (3) comprehensive accommodation chronos issued for plaintiff's low back injury, two (2) by defendant Dr. Lee as follows and one (1) by non-party Nurse Practitioner S. Kansier:

1. Comprehensive Accommodation Chrono Form 7410, by defendant Lee indicating a lower or "bottom bunk" for plaintiff 4 months dated 12/01/08 and stating "Inmate should not be assigned to a job requiring frequent bending and should not lift more than 20 lbs." Approved by HCM/CMO on 12/01/08. ECF No. 1 at 12, 54; plaintiff's Deposition at 90; MSJ, ECF No 68-2, Ex. HHH at 2.

2. Comp. Accom. Chrono dated 2/11/09 by S. Kansier: "Acute back injury – workman's compens[]ation 8-11-08  No bending, stooping, standing for extended periods of time  No lifting over 20 [lbs]." Approved by HCM/CMO 2/19/09.  ECF No. 1 at 13, 53, ECF No. 1-1 at 23, 45[3]; MSJ, ECF No 68-2, Ex. HHH at 4.

3. Comp. Accom. Chrono from by defendant Lee for 9/10/09, indicating plaintiff needed a lower bunk through Feb. 11, 2010 and stating: "Acute back injury-Workman's Compensation 8/11/08 with recurrent back pains, spasms  No frequent bending, stooping, standing for extended periods of time.  No lift[] more than 20 lb[s]."  MSJ, ECF No. 68-2, Ex. HHH at 5.

- Plaintiff was first seen by defendant Lee for his back injury on December 1, 2008 although scheduled for treatment of an unrelated medical condition. At that time, plaintiff told defendant Lee he had strained his back while working in the kitchen on August 11, 2008.  Plaintiff gave defendant Lee the workers compensation claim number of the claim he had filed through his employer: 05373848.  MSJ, Lee Dec. ¶ 5, ECF No. 72 sealed Ex. H.

- On December 1, 2008, plaintiff reviewed plaintiff's medical records and found that on November 13, 2008, Nurse Practitioner (NP) Kansier had conducted a full examination of plaintiff's back and his unrelated medical condition.  NP Kansier's notes indicated plaintiff showed no bowel or bladder symptoms, no spasm in the lower back, no neuropathy or radiculopathy in the lower extremities, and no limitation of his activities of daily living (ADLs).  NP Kansier's physical examination revealed stable vital signs without fever, that patient was alert, oriented, and in no acute distress.  Plaintiff had a normal gait, a negative straight leg raising (SLR) test, meaning the test was normal, and intact circulation and sensation bilaterally.  He could bend forward to 90 degrees without difficulty, and deep tendon reflexes were present and equal bilaterally.  Id.

- Defendant Lee's 12/01/08 examination of plaintiff's back found no tenderness at the area of his pain and found good range of motion, flexibility, and rotation of his low back. He diagnosed plaintiff as having right paraspinal low back strain and prescribed naproxen, a non-steroidal anti-inflammatory drug (NSAID) with refills.  Defendant Lee advised plaintiff to request follow-up appointment with him as needed for his back pain. Dr. Lee also submitted a Form 7410, Comprehensive Accommodation Chrono form as set forth above.  MSJ, Lee Dec. ¶ 5, ECF No. 68-2, Ex. HHH; ECF No. 72, sealed Exs. G, H.

- On December 10, 2008, plaintiff saw defendant Lee, per his request and scheduled by defendant RN Damiano.  Plaintiff told defendant Lee that he continued to have low back pain despite taking the NSAID, describing the intensity at between 3 to 5 out of 10 (10 being the worst pain) and the pain was radiating toward his coccyx with occasional electric shock sensation running down both lower extremities, left greater than right.  He

---

[3] Exhibits included by plaintiff with the original complaint.

also said that naproxen caused palpitations and that he had stopped taking it two days earlier. Defendant Lee reviewed his medical records and noted that defendant RN Damiano had seen him on December 8, 2008 and noted that he was "very talkative, no facial grimacing noted, ambulates with a steady gait." His blood pressure on December 10, 2008 was 131/86 and pulse was 73 beats per minute. Defendant Lee examined plaintiff's back, noting no bruising, masses, welling, tenderness or deformity. The seated SLR test was negative in both lower extremities, but plaintiff resisted flexion beyond 15 degrees. Plaintiff did not describe shooting pains down either lower extremity during the SLR test. He had 1+ knee jerks bilaterally. Defendant Lee's examination did not reveal "red flags" (clinical indicators of possible serious underlying conditions requiring further medical intervention), and he discontinued naproxen and ordered x-rays of the lumbar spine. Defendant Lee did not feel plaintiff needed any other pain medication at that time. Defendant Lee advised plaintiff to avoid contact sports or further injury. Defendant Lee advised plaintiff he would order follow-up as needed after plaintiff's x-ray report was returned. ECF No. 1 at 10-11; MSJ, Lee Dec. ¶ 11, ECF No. 72, sealed Exs. J, K.

- Although plaintiff discontinued the naproxen prescription due to an adverse reaction, plaintiff testified that several months later he filed an appeal because defendant Lee had renewed the naproxen prescription which plaintiff believed occurred because the defendant had failed to review his records. Plaintiff's Dep: 88-89.

- Dr. Robert Bemrick of Mercy Hospital submitted report dated December 12, 2008 of three x-ray views taken of plaintiff's lumbar spine which defendant Lee was provided on December 17, 2008:

    "FINDINGS: The lumbar vertebral bodies are aligned normally and exhibit normal stature and appearance. The intervertebral disc spaces are preserved at all lumbar levels and are unremarkable. The facet joints are normal, and the posterior elements are unremarkable.

    CONCLUSION:
    Normal lumbar spine."

    Defendant Lee indicated that the x-ray report was normal and signed a diagnostic testing notification form forwarded to plaintiff by the Medical Records Department. MSJ, Lee Dec. ¶12, ECF No. 72 (sealed records), Ex. L at 26.

- Defendant Lee has the authority to submit a Comprehensive Accommodation Chrono on CDC Form 7410 documenting the inmate's accommodations, with regard to housing, medical equipment or supplies, other accommodations such as daily showers or cell feeding, and physical limitations in job assignments; as a physician, he is not authorized to determine an inmate's housing, clothing, diet or job assignments and can only recommend modifications based on an inmate's health status but cannot enforce those guidelines. It is for custody to enforce the medical accommodations provided to an inmate. MSJ, Lee Dec. ¶¶ 10, 29.

- Plaintiff himself thought the medical treatment for his back was going "in the right direction" up to the point that the Dec. 8, 2008 x-rays were ordered for his back, but "at some point down the line . . . [i]t came to a halt. . . ." Plaintiff's Dep. at 86-87.

////

- Plaintiff was seen by defendant Lee on January 5, 2009, on his requests for a 30 day lay-in for his continued back pain and to undergo an MRI[4] of his back.  According to defendant Lee, plaintiff informed him that he did not want to work in culinary.  Plaintiff complained of pain in his right paraspinal area.  His blood pressure was 136/82, pulse was 83 beats per minute, and he did not appear to be in distress.  Defendant Lee examined his back again, noting no bruising, swelling, masses, hematoma, tenderness, or muscle spasms.  Defendant Lee found plaintiff demonstrated good range of motion in his back and found he was able to bend forward and straighten.  Defendant Lee discussed his normal lumbar spine x-ray report of December 12, 2008 in detail and prescribed 325 mg of Tylenol 2 tablets twice a day as needed for 30 days, and advised him to apply warm compresses as needed, to do back stretching exercises, and to avoid contact sports.  Dr. Lee explained that the Medical Department does not assign jobs and that plaintiff needed to discuss his job assignment with Custody and request Custody to comply with the Comprehensive Accommodation Chrono which was provided to him on December 1, 2008.  In light of the essentially normal findings of the reexamination of plaintiff's back and his normal lumbar spine x-rays, defendant Lee told plaintiff that an MRI of his lumbar spine was not medically indicated and that his current medical condition did not warrant a lay-in.  Lee Dec. ¶ 13, ECF No. 72 sealed, Exs. L, M, N.

- On January 5, 2009, plaintiff filed a CDCR 602 HC, FSP-09-10048, complaining that the x-ray he received was not adequate because an x-ray can only show skeletal, but not muscle or tissue, damage.  He stated he had random shocks in his lower back and legs and complained that his request for an MRI/cat scan was being denied and that he was forced to endure pain because he was only provided Tylenol which was recorded as ineffective.  He sought a lay-in because of his pain and stated he was in too much pain to work.  ECF No. 1-1 at 64.

- Plaintiff filed a health care services request form dated February 4, 2009 in which he indicates that he is following up on a work-related injury to his back, that his back is still pain with pain and shocks increased.  The nurse (non-party) states that plaintiff had been previously seen and worked up by defendant Lee.  Plaintiff stated he was told by his counselor to get an accommodation chrono which specifically spells out what plaintiff can or cannot do.  Form completed on February 6, 2009.  Plaintiff's Dep: 103; ECF No. 72 (sealed), Ex. O at 32.

- Medical records indicate plaintiff was seen on February 11, 2009 and, as noted, S. Kansier issued a Comp. Accom. Chrono dated 2/11/09 stating: "Acute back injury – workman's compens[]ation 8-11-08  No bending, stooping, standing for extended periods of time   No lifting over 20 [lbs]."  ECF No. 1 at 13, 53, ECF No. 1-1 at 23, 45 ; MSJ, ECF No 68-2, Ex. HHH at 4; ECF No. 72, sealed Ex. P.

- A first level appeal response, dated February 24, 2009, regarding CDCR 602 HC, FSP-09-10048 indicates that plaintiff was seen by defendant Lee on February 19, 2009.  MSJ, ECF No. 68-5, Ex. AAA at 60.

- Defendant Lee advised plaintiff he did not request an MRI based on all of the clinical information available to him, including plaintiff's history, physical examination, and x-ray report.  Dr. Lee believed that an MRI would not provide additional information for plaintiff's medical care or affect the treatment he was receiving from himself and the FSP medical department at the time, an opinion defendant Lee still holds based on his review of plaintiff's examinations and reports.  MSJ, Lee Dec. ¶¶ 15, 27,  Ex. AAA.

---

[4] Magnetic Resonance Imaging.

12

- Plaintiff avers that defendant Lee told him that if he ordered an MRI, it would be denied because a medical review board would find it too costly because the x-rays showed nothing wrong.  Plaintiff's Dep. 99:12-25.

- Although the February 19, 2009 visit was for the purpose of responding to plaintiff's grievance, plaintiff was provided treatment for an unrelated medical condition at his request; he recommended follow-up for plaintiff's unrelated condition as well for plaintiff's back pain, also recommending back stretches by plaintiff as tolerated. MSJ, Lee Dec. ¶ 16, ECF No. 72, sealed Ex. R.

- Plaintiff sought a second level appeal review, on March 9, 2009 of CDCR 602 HC, FSP-09-10048  continuing to seek an MRI/cat scan, complaining of defendant Lee's not giving him a lay-in and contending that the doctor was not documenting his medical diagnosis properly, stating that defendant Lee had said that plaintiff had a "torn muscle" which was "most likely" to leave plaintiff with permanent pain and "that surgery could not repair torn muscle."  Plaintiff also complained that his pain was increasing and pain medicine was not helping.  ECF No. 1-1 at 63.

- On March 10, 2009, plaintiff was treated for an unrelated medical condition.  Plaintiff's medical records indicate that defendant Lee conducted a physical examination of plaintiff and ordered testing, medications and follow-up for unrelated medical conditions.  MSJ, Lee Dec. ¶ 17, ECF No. 72, sealed, Exs. S, T.

- On March 16, 2009, plaintiff's medical records demonstrate that he was seen by defendant Lee to follow up on an unrelated medical condition.  The report shows and defendant Lee declares that his examination revealed normal findings and mild tenderness to palpation in plaintiff's lumbar spine area.  Defendant Lee found plaintiff's seated straight leg raising test was negative (normal) bilaterally to over 90 degrees of thigh flexion.  Defendant Lee declares that he discussed plaintiff's lab tests, which were essentially normal, noting that NP Kansier had revised plaintiff's Comprehensive  Accommodation Chrono on February 11, 2009 to include no stooping or standing for extended periods of time at work.  The March 16, 2009 interdisciplinary progress notes also show defendant Lee noted that plaintiff "has 2 chronos for no lifting over 20 lbs. no bending, stooping, prolonged standing."  Due to plaintiff's continued low back pain and tenderness, defendant Lee submitted a Request for Services (RFS) form for Physical Therapy consultation, approved by the Chief Medical Officer.  Defendant Lee ordered a thirty-day follow-up for plaintiff (with Lee).  MSJ, Lee Dec. ¶ 18, ECF No. 72, sealed, Exs. V, W.

- On March 16, 2009, plaintiff submitted a health care services request form to see the nurse practitioner he had seen before having been seen by defendant Lee, accusing Lee of being a "co-conspirator" who was "violating medical."  The response by the triage nurse indicates plaintiff wanted to see N.P. Kansier about "his lay-in and work conditions," and appeared to refer him to his primary care provider for a March 18, 2009 appointment. ECF No. 72, sealed, Ex. U.

- Plaintiff filed a CDC Form 1824, Reasonable Modification or Accommodation Request dated March 18, 2009, Appeal Log No. FSP-26-09-10288, wherein plaintiff stated that he was suffering substantial back pain from his job-related lower back injury, despite his medical chrono restricting his standing, stooping or bending and lifting to 20 pounds and asserting that he had been forced to return to work on Feb. 8, 2009, where he had to bend and stand for hours and lift more than 20 pounds which had caused him more stress and heart-related problems. ECF No. 1 at 45, 49.

- On April 29, 2009, plaintiff was seen by defendant Lee for follow-up on his back pain and his response to physical therapy.  A chart review showed plaintiff had his first visit with

Ron Brown, Physical Therapist, on April 21, 2009.  He complained of midline lumbar pain and denied pain over the sacroiliac joints.  The PT's examination revealed plaintiff was 20 pounds overweight, with abdominal protrusion, normal range of motion of the dorsolumbar (thoracic and lumbar) spine, and improper transfer while lying down.  The PT diagnosed an inflamed L1 to L5 lumbar longitudinal ligament, gave plaintiff instructions on proper body mechanics and provided him with a written sheet of instructions for a Home Exercise Program. MSJ, Lee Dec. ¶19, ECF No. 72, Exs. X, Y.

• Defendant Lee's 4/29/09 examination of plaintiff showed he had blood pressure of 132/84, pulse of 78 beats per minute, and weighed 199 pound with a Body Mass Index (BMI) of 29. (Normal BMI is 20-24; plaintiff overweight.)  Records review showed that he did not come in for weekly blood pressure checks ordered on March 10, 2009.  Lee's examination showed plaintiff to be in no acute distress.  Lee noted plaintiff as walking briskly with no sign of discomfort.  Defendant Lee advised plaintiff to come in for blood pressure checks as ordered and recommended continuing current medications, continuing exercises and stretches per Physical Therapy instructions, to avoid contact sports, and to keep his chronic care follow-up visit as scheduled.  Plaintiff complained that his culinary job was inappropriate.  Chart review revealed an Informative Chrono (CDC 128-B) written by Correctional Officer B. Bickford on April 20, 2009 filed under the Medical Chronos section of his chart attesting that Officer Bickford had "never seen patient show any signs of physical discomfort or seen any restrictions in his movements.  Inmate Willis does not show any signs of a debilitating medical condition."  Building 5 Sergeant Sandoval came into the Medical Clinic at defendant Lee's request, advising plaintiff to speak with his Counselor regarding job reassignment or to request transfer to another CDCR facility if he wished. MSJ, Lee Dec. ¶19, ECF No. 72, Ex Z.

• Officer B. Bickford's CDC 128-B chrono, dated 4/20/09 states: "Inmate Willis . . . has been reported to have a fairly serious medical condition so at the request of Sergeant K. Sandoval, I have been observing him for 30 days and can attest to the following: he is out on the Unit V Mini-Yard at least 75% of the time.  I have seen him stand for hours at a time with no signs of stress.  I have seen him walk up and down the yard for hours at a time with a partner while smiling and laughing.  I have seen him jog to sign-up for the Mini-Yard showers as if it was nothing unusual.  Inmate Willis has never come to me with any complaints of pain or a request to be let in to Unit V early.  In all the time I have observed Inmate Willis I have never seen him show any signs of physical discomfort or seen any restrictions in his movement.  Inmate Willis does not show any signs of a debilitating medical condition.  Inmate Willis is aware of this report."  ECF No. 1 at 24; ECF No. 1-1 at 61.

• Plaintiff denies he was notified of the Bickford CDC 128B chrono immediately as he was supposed to be; rather, he became aware only when it was brought up to him by defendant Lee on 4/29/09.  Plaintiff filed an inmate appeal, FSP No. 09-00418, dated 5/19/09, calling the informational chrono written by non-party Bickford, inter alia, "false" and "deceptive." ECF No. 1 at 86-88; ECF No. 1-1 at 97-98; plaintiff's Dep. at 132.

• On May 4, 2009, plaintiff was sent to defendant Lee to reply to Log No. FSP-26-09-10288 his second grievance filed against the Medical Department pertaining to inadequate medical care for his back pain and inappropriate job assignment to culinary.  Defendant Lee again explained that the Medical Department has continued to provide him with appropriate medical examinations, testing, medications, physical therapy, accommodations, and follow-up care, and that there were no current medical indications for MRI imaging or specialty referral.  Plaintiff was advised that the Medical Department may supply him with job and housing accommodations, but that the actual job and housing assignments are under Custody's jurisdiction.  He was advised to speak with his Counselor and his employer regarding his job assignment and/or transfer to another

14

1    CDCR facility. ECF No. 1 at 45; MSJ, Lee Dec. ¶ 20, Ex. AA (sealed), CCC.

2    •   Plaintiff alleges in his verified amended complaint medical staff refused to evaluate him
         further and that defendant Lee stated on May 4, 2009, "'that it would cost too much
3        money when we can just send you to therapy which we'll have to do anyway.'"  FAC at 5.

4    •   Defendant Lee declares the cost of an MRI treatment was never an issue since it was
         covered by plaintiff's employer's workers compensation insurance fund.  MSJ, Lee Dec. ¶
5        20, Exs. AA, CCC.

6    •   On May 4, 2009, while plaintiff was only scheduled to discuss his grievance with
         defendant Lee, defendant Lee examined and treated him for an unrelated condition.  MSJ,
7        Lee Dec. ¶ 21, Ex. BB (sealed).

8    •   On June 24, 2009, plaintiff was sent to see defendant Lee for an unrelated medical
         condition.  His blood pressure was 130/86 and pulse was 73 beats per minute.  Defendant
9        Lee recommended plaintiff keep his Chronic Care Program follow-up visit as scheduled.
         Plaintiff sought a job change.  Building 5 Sergeant Sandoval came into the Clinic and
10       spoke with plaintiff, advising him to continue to submit his requests for job change and
         transfer to another CDCR facility to the appropriate custody departments.  A review of his
11       chart showed that on May 19, 2009, plaintiff had had his second Physical Therapy visit
         with the PT during which he told the PT "I'm feeling worse!"  He told the PT he had only
12       tried his Home Exercise for one day and the PT noted that he had told plaintiff he would
         be sore with his exercises.  The PT found plaintiff to be "poorly motivated," "not
13       complying with Home Exercise Program", and "does not want to comply."  The PT
         discontinued Physical Therapy on May 19, 2009.  Lee Dec. ¶ 22, ECF No. 72 (sealed)
14       Exs. CC, FF, GG.

15   •   Plaintiff denies the accuracy of what the PT noted, testifying that the PT had told him that
         if the exercises were causing too much pain, he should stop.  Plaintiff's Dep: 126-127;
16       134-135.

17   •   Plaintiff testified that defendant Lee had told him to try to engage in physical therapy but
         not to do anything that would exacerbate the injury.  Plaintiff's Dep. 115-116.
18
     •   On September 10, 2009, plaintiff was seen by defendant Lee for his Chronic Care
19       Program for unrelated medical conditions but complained of low back pain and spasms at
         times, requesting renewal of his bottom bunk accommodation.  Physical examination was
20       normal with no deformities or tenderness of his back.  Defendant Lee revised his
         medications for unrelated medical conditions, renewed his Comprehensive
21       Accommodation Chrono to extend his bottom bunk and work restrictions, and ordered a
         Chronic Care Program follow-up visit in 90 days.  MSJ, Lee Dec. ¶ 23, sealed Exs. II, JJ.
22
     •   After September 10, 2009, defendant Lee had no further medical encounters with plaintiff
23       because plaintiff was transferred to a different building at FSP.  MSJ, Lee Dec. ¶ 24.

24   •   Plaintiff testifies that he was provided ibuprofen and Tylenol and that defendant Lee did
         not discontinue these medications.  Plaintiff's Dep. at 114-115.
25
     •   Plaintiff testified that at some point defendant Lee offered him narcotics for his pain but
26       because plaintiff had a history of abuse, he did not want them.  Plaintiff's Dep: 100, 114.

27   •   Plaintiff also testified that medical staff did all it could to get him removed from his job;
         he mentions, in particular, that defendant Lee "was doing things to try to get [plaintiff]
28       transferred out of there, medically."  Plaintiff's Dep. 134:3-9.

1

2
- Plaintiff attested that medical staff had done all they could [to remove him from his
culinary job and address his pain] after giving him medical accommodation chronos,

3
medical evaluations, eventual lay-ins and offering narcotics but "their hands were tied."
Plaintiff's Dep.: 136-137.

4

- Plaintiff was released to parole on March 26, 2011.  Plaintiff's Deposition (lodged),

5
20:18-22; MSJ, ECF Mo. 68-3, Ex. MM.

6
- Plaintiff has submitted documentation with his opposition indicating that he has obtained
two MRI's of his lumbar spine and an EMG since his parole.  Opp., ECF No. 73 at 5-9.

7

8
    3.  <u>Analysis</u>

9
    In the face of the medical records exhaustively referenced above, plaintiff fails to raise a

10
genuine issue of material fact with respect to an Eighth Amendment violation by either defendant

11
Damiano or defendant Lee.

12
        a.  *Defendant Damiano*

13
    It is undisputed that plaintiff had only four interactions with defendant Damiano regarding

14
medical issues.  Of those four, only two could have in any way concerned plaintiff's back injury

15
because only the latter two, in October and December 2008, occurred subsequent to the date of

16
the August 2008 injury.  In neither of those encounters is there evidence provided to demonstrate

17
that defendant Damiano's actions with regard to the assessment and treatment of plaintiff's back

18
injury constituted deliberate indifference.  In both instances, the record demonstrates that

19
Damiano did not simply disregard plaintiff's complaints regarding his back pain, but rather made

20
an assessment, advised him on how to move so as to minimize any negative impact on his back,

21
and determined that plaintiff's complaints and condition warranted a physician referral.  The

22
referral was made.  Plaintiff's difference of opinion regarding the adequacy of the provided

23
treatment does not create a constitutional issue.  See <u>Jackson</u>, 90 F.3d at 332.

24
    Damiano documented that in his fourth and last encounter with plaintiff on December 8,

25
2008, plaintiff (who was being seen for some other medical condition) complained that ibuprofen

26
was ineffective for his back pain.  It is undisputed that Damiano could have conferred with a

27
doctor about additional or different medication and drafted a proposed order for such medication,

28
had Damiano determined that such action was called for.  But nothing in the record creates a

16

1    material factual dispute on the question whether Damiano's failure to take such action constituted

2    deliberate indifference.  The record is devoid of objective evidence known to Damiano that

3    plaintiff's pain reflected a serious medical need, or evidence that Damiano acted with a level of

4    culpability above mere negligence.  And the record establishes that, as a registered nurse,

5    Damiano lacked the authority to actually prescribe plaintiff pain medication or order any kind of

6    diagnostic test.

7         Drawing all reasonable inferences in favor of plaintiff, Walls, 653 F.3d at 966, the court

8    finds that the record as a whole could not lead a rational fact trier to find for plaintiff on his

9    claims of deliberate indifference against defendant Damiano.  Matsushita, 475 U.S. at 587.

10   Plaintiff raises no genuine issue of material fact as to whether defendant Damiano subjected him

11   to the unnecessary and wanton infliction of pain.  Defendant Damiano is accordingly entitled to

12   summary judgment.

13         b.  *Defendant Lee*

14         Plaintiff contends that Dr. Lee failed to respond adequately to his requests for further

15   testing and to his early complaints of pain and requests for lay-ins.  In support of his opposition to

16   summary judgment, plaintiff submits unauthenticated exhibits intended to demonstrate that he has

17   subsequently had diagnostic tests including two MRIs.  These exhibits do not create a genuine

18   dispute of material fact.  Whether or not defendant Lee refused to provide an MRI on the basis of

19   cost, which plaintiff avers and Dr. Lee adamantly disputes, the broad range of medical care that

20   plaintiff was provided, and the absence of evidence that an earlier MRI was necessary to prevent

21   the wanton infliction of pain, preclude a finding of deliberate indifference.  The tests plaintiff has

22   obtained subsequent to his release do not demonstrate that an MRI was medically necessary at the

23   time Dr. Lee treated him.  Plaintiff's exhibits are unaccompanied by any expert declaration or

24   other evidence to explain the results or how his treatment has been modified from that which he

25   received from defendant Lee.  Even if plaintiff did receive different and better treatment

26   following his release from prison, that would not raise a genuine issue of material fact as to

27   whether plaintiff had been subjected to deliberate indifference by defendant Lee.  "A difference

28   of opinion between a physician and the prisoner -- or between medical professionals --

17

1    concerning what medical care is appropriate does not [without more] amount to deliberate

2    indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012); see also, Sanchez v. Vild,

3    891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to treatment of serious

4    medical needs does not amount to deliberate indifference); Jackson, 90 F.3d at 332.

5          The record demonstrates that defendant Lee saw plaintiff numerous times regarding his

6    back pain and other complaints, repeatedly examined him and conducted tests of his reflexes and

7    flexibility.  Defendant Lee provided plaintiff with accommodation chronos to restrict the

8    conditions under which he could work and to provide him with a bottom bunk.  Indeed, he

9    provided plaintiff with an accommodation chrono on the first day that he saw him for his back

10    injury complaints.  Within days of the initial visit, Dr. Lee ordered x-rays of plaintiff's lumbar

11    spine.  Plaintiff's medical record shows that during the relevant period he was provided physical

12    therapy and follow-up care as well as the accommodation chronos, medical examinations,

13    diagnostic tests, and medications.

14          Plaintiff was prescribed pain medication over multiple visits.[5]  It is undisputed that

15    defendant Lee originally prescribed naproxen, which was discontinued due to heart palpitations

16    but later re-prescribed.  Plaintiff also avers that defendant Lee offered him "narcotics" for his

17    pain, which plaintiff declined due to a history of drug abuse.  Assuming these aspects of Dr. Lee's

18    treatment of plaintiff's pain reflect a failure to review plaintiff's medical record carefully, this

19    amounts to no more than negligence.  The Eighth Amendment does not require optimal medical

20    care, it prohibits deliberate indifference.  Negligence "in diagnosing or treating a medical

21    condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

22    Medical malpractice does not become a constitutional violation merely because the victim is a

23    prisoner." Estelle v. Gamble, 429 U.S. at 106; see also, e.g., Anderson v. County of Kern, 45

24    F.3d 1310, 1316 (9th Cir.1995); Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th

25    Cir.1980) (per curiam).  Even gross negligence, which is not suggested by the record in this case,

26    is insufficient to establish deliberate indifference to serious medical needs.  See Wood v.

27

28    [5] It is not disputed that plaintiff was provided with both ibuprofen and Tylenol for his pain.

18

1    Housewright, 900 F.2d at 1334.

2        It is also not in dispute that although Dr. Lee prescribed accommodations, actual job and

3    housing assignments are within the jurisdiction of custody staff rather than medical staff.

4    Plaintiff provides no evidence to support the notion that medical staff can compel custody staff to

5    conform with medical chronos.  In other words, there is no genuine factual dispute that defendant

6    Lee lacked authority to compel custody staff to change plaintiff's job assignment or to dictate

7    custody staff's implementation of the accommodation chronos.  Accordingly, Dr. Lee cannot be

8    liable for inadequate implementation of the chronos.  Moreover, plaintiff testified that Dr. Lee

9    ultimately argued on his behalf to the custodial staff in an effort to have him removed from his

10   culinary job.  Plaintiff's Dep. at 106-107, 109.  Such conduct is inconsistent with deliberate

11   indifference.

12       As with defendant Damiano, there remains no genuine issue of material fact on the

13   ultimate Eighth Amendment question: whether defendant Lee injury subjectively knew of and

14   disregarded "an excessive risk to inmate health and safety" in his treatment of plaintiff's back

15   pain.  Toguchi v. Chung, 391 F.3d at 1057.  Accordingly, Dr. Lee is entitled to summary

16   judgment.

17           c.  *Qualified immunity*

18       Because the court has found no genuine issue of material fact implicating the Eighth

19   Amendment, the court need not reach the question of qualified immunity.  The motion for

20   summary judgment as to defendants Lee and Damiano should be granted on the basis that no

21   genuine issue of material fact exists on the question of deliberate indifference in their treatment of

22   plaintiff's back injury.

23        B.  Defendants Curry, Dochow, Vasquez, Johnston, Hayward

24           1.  Overview of Claim

25       Plaintiff contends that defendants Curry, Dochow, Vasquez, Johnston and Hayward were

26   deliberately indifferent to his work-related back injury either (1) by compelling plaintiff to work

27   in violation of restrictions prescribed by medical staff, or (2) by permitting such restrictions to be

28   violated.  FAC, ECF No. 11 at 3-5.  Defendants argue that those defendants responsible for

accommodating plaintiff's work limitations as set forth by the medical department did so, and that no correctional staff defendants were deliberately indifferent to plaintiff's medical needs.  MSJ, ECF No. 67-1 at 13-16, 31-35, 37.

        2.  Facts

        The following facts are undisputed unless otherwise specified:

- Defendants L. Vasquez and D. Dochow were correctional officers assigned to culinary at FSP from April 2007 through early 2010, encompassing the period relevant for this action; culinary consists of the kitchen and dining halls where meals are prepared to be served to inmates.  MSJ, L. Vasquez Declaration, ECF No. 67-4 at ¶ 1; Dochow Declaration, ECF No. 67-5 at ¶ 1.

- Defendant R. Curry was the sergeant in the FSP culinary from May 2008 through about 2011, which encompasses the time relevant for this action.  MSJ, Curry Declaration, ECF No. 67-9 at ¶ 1.

- Defendant D. Johnston was during the period relevant for this action a correctional counselor I at FSP, whose duties included responding to inmate appeals and general inmate issues, meeting with inmates before their Unit Classification Committee (UCC) hearings, presenting an inmate's case at the UCC and recording the UCC hearing proceedings.  She was "the first line of communication with an inmate to resolve concerns relating to an inmate's programs at FSP."  Plaintiff was among those inmates assigned to defendant Johnston.  MSJ, Johnston Declaration, ECF No. 67-7 at ¶¶ 1-2, 4.

- Defendant N. Hayward has been a Facility Captain for Buildings 2 and 5 at FSP since December 1, 2008, covering the relevant period, whose duties include chairing the UCC, interviewing staff and inmates regarding grievances and supervising the buildings of which she is in charge.  MSJ, Hayward Declaration, ECF No. 67-6 at ¶¶ 1-2, 4.

- Defendants Curry, Vasquez and Dochow did not witness plaintiff's August 11, 2008 injury.  MSJ, Declaration of D. Dochow, ECF No. 67-5 at ¶¶ 10-11; MSJ, Declaration of Vasquez, ECF No. 67-4 at ¶¶ 12-13, Ex. GGG; MSJ, Curry Declaration, ECF No. 67-9 at ¶ 10.

- Plaintiff testifies that he was "red-lined medical" that is, he was granted lay-ins or otherwise allowed not to work at his job in culinary from August 18, 2008 until at least November 27, 2008 and possibly until December 31, 2008.  FAC at 4; Plaintiff's Dep. at 171.

- Plaintiff filed a Reasonable Modification or Accommodation request, Form 1824, Log No. FSP-08-1310, dated October 11, 2008, claiming the culinary staff was trying to force him to work in a hostile environment and asking to be removed from culinary.  Plaintiff asserted that he had provided adequate documentation and had a verbal confrontation with the sergeant and CO's in culinary because of his injury claim.  He states that "they" claim to try and accommodate him with the same job, line server, he had when he was injured.  ECF No. 1-1 at 77-78.  Plaintiff had an interview at the second level with defendant Curry who in a December 31, 2008 response, said plaintiff's position had been modified to light duty and he was unaware of plaintiff's accusations of having been forced to bend excessively and lift more than 20 lbs.  Plaintiff appealed to the third level on January 14, 2009, claiming that the non-light duty line server position cannot be modified and that "they" are unwilling to modify the duty tier tender position to be light duty; he also notes

20

that he has requested a clerical assignment.  ECF No. 1 at 96-99; ECF No. 1-1 at 77-80.

- Defendant Curry authored a memorandum, dated November 11, 2008, indicating that plaintiff approached him on October 30, 2008, stating that he had hurt himself at work on August 18, 2008 and needed paperwork to document the occurrence.  MSJ, Curry Declaration, at ¶ 11, Ex. DDD.

- According to defendant Curry's 11/11/08 memo, no staff could recall plaintiff's injury, although on October 31, 2008, plaintiff told him that defendant Vasquez had seen him slip and fall and that he (plaintiff) had informed another staff member about his accident, whose name he could not recall.  Plaintiff then went to the doctor on his own three or four days later and obtained a lay-in for work.  Later, it was discovered defendant Vasquez was not at work on the date of plaintiff's injury.  MSJ, Curry Declaration, ¶¶ 12-13, Ex. DDD; Vasquez Decl. ¶  12, Ex. GGG.

- Defendant Curry declares that he did not refuse to complete any reports of plaintiff's injury and that he completed the State Compensation Insurance Fund, Employers Report of Occupational Injury or Illness form that must be completed by the employer after reviewing plaintiff's claim attached with the Employers Report of Occupational Injury or Illness and confirming that plaintiff's claimed injury occurred on August 11, 2008.  A copy of the State Compensation Insurance Fund, Employers Report of Occupational Injury or Illness form is kept in the inmate's central file, and is maintained in the regular course and scope of business by CDCR.  MSJ, Curry Dec., ECF No. 67-9, ¶¶ 15, 17, Ex. EEE (copy of a State of California Employers Report of Occupational Injury or Illness).

- On the worker's compensation form itself, November 7, 2008 is set forth as the "Date Employee Was Provided Claim Form."  August 11, 2008 is recorded as the "Date of Injury" and August 14, 2008 is noted as the "Date Last Worked."  It is also noted that the injury affected the "lower back right side," resulted in "pain" and occurred while plaintiff was "squeegeeing excess water off floor tried to get down for an alarm slipped on wet floor."  MSJ, ECF No. 68-8, Ex. EEE.

- In addition, on the state compensation insurance fund form, in the portion to be completed by the employee, "today's date" is recorded as November 7, 2008.  In the section to be completed by the employer, the "Date employer firs[t] knew of injury" is recorded as October 17, 2008, while elsewhere in the documentation the date of notice to the employer is recorded as October 15, 2008, while the date the claim form was provided to "employee" was noted as November 7, 2008.  Id.

- On a form entitled "Folsom State Prison Occupational Accident, Injury and Illness Investigation Form," apparently part of the report for the state compensation insurance fund, the date of the injury is noted as August 11, 2008 and plaintiff was described as "rinsing floors down & pushing water to drain with squeegee" just before the incident when he "slipped on the floor trying to get down for an alarm," resulting in injury to his "lower back right side" which caused "pain."  Id.

- Plaintiff initiated, on November 14, 2008, a 602 appeal, Log No. FSP-08-01215, complaining that when he went to get an injury report for his back injury to receive medical treatment, the staff was evasive in doing so for awhile, which appeal he appears to have withdrawn as of December 22, 2008.  ECF No. 1-1 at 75-76.

- While defendant Vasquez acknowledges he knew that plaintiff had medical restrictions limiting him to light duty, he asserts he did not personally assist in any accommodations for plaintiff because it was not his job, as the count officer in culinary, and he never directed plaintiff with regard to any culinary duties.  MSJ, Vasquez Dec. ¶¶ 2, 15-16.

21

- Defendant Vasquez declares his job was to check in inmates reporting for work and to check them out, to contact an inmate's unit if he did not arrive to work for his scheduled shift to find out why, and to confirm authorized absences by verifying an inmate's "lay-in" slip, which is a medical note excusing the inmate from work for a particular time period. MSJ, Vasquez Dec. ¶¶ 2-5.

- Plaintiff has alleged that on one occasion, May 3, 2009, defendant Vasquez kept forcing "plaintiff to do harsh labor without breaks," telling him that "'once you came to prison you no longer have rights.'" FAC at 5.

- Defendant Vasquez recalls reviewing some of plaintiff's lay-in slips but does not recall how many there were. Vasquez Dec. ¶ 9.

- Defendant Dochow was the supervisor working in culinary on Monday August 11, 2008 and was plaintiff's supervisor when he worked there from 2008 and 2009. Her duties included supervising all inmates in dining room # 2, ensuring that they were working, checking them in and out of work as shifts changed, and making accommodations for inmates with medical chronos for light duty assignments. MSJ, ECF 67-5, Dochow Dec. ¶¶ 1-2, 6, 9.

- Inmate culinary duties included preparing and serving inmate meals, and cleaning up the dining hall after meals by wiping down tables, mopping floors and washing dishes. Dochow Dec. ¶ 4.

- Defendant Dochow declares that while an inmate worker is required to immediately report to his supervisor, if injured on the job or off the job whereupon she would immediately send him for medical treatment, plaintiff did not report any injury to her on August 11, 2008. MSJ, Dochow Dec. ¶¶ 7-8, 12; Curry Dec. ¶ 15, ECF No. 68-8, Ex. EEE.

- Plaintiff testified that defendant Dochow knew about his injury on the day it occurred and told him to go and see a nurse. Plaintiff's Dep. at 65.

- Culinary staff were aware that plaintiff complained of back pain and plaintiff told defendant Curry he wanted to be unassigned from culinary. Curry Dec. ¶¶ 22, 25; Dochow Dec. ¶ 13.

- Defendant Curry was aware that plaintiff tried to leave culinary but was not reassigned. MSJ, Curry Dec. ¶¶ 25-27.

- Defendant Curry states he is not authorized to unassign an inmate from culinary to another job assignment. Curry Dec. ¶ 26.

- Notwithstanding defendant Curry's declaration that he did not have authority to unassign plaintiff, he appears to have sought plaintiff's job reassignment, or at least plaintiff's removal from the kitchen job, at one point. Defendant Curry authored a December 10, 2008 CDC 128-B1 General Chrono stating that plaintiff had "been out of work for the last 60 plus days for a work related injury. On 12/07/08 his doctor released him for light duty work. I advised Willis that there was light duty work available for him to perform. Willis stated, 'I can't come back to culinary.' I ordered Willis to report to work once count cleared. Willis stated 'I'm not coming back to work in the culinary I have medical issues. I'm not doing that slave work.' I ordered Willis to report to work after count cleared. Willis stated, 'I'm not coming back to work in the culinary.' Willis handed me his work card and stated, 'I'm not coming back to the culinary. You can write it up how ever you want to.' As Willis walked away I told him that would receive a CDC 115 for refusing to work his job. I am requesting that Willis be removed form [sic] his current culinary job

22

DRWF2.362.  I further request that he be removed from the food handler's list."  ECF No. 1-1 at 15; ECF No. 1-1 at 52.

- On December 31, 2008, defendant Curry was advised that plaintiff had filed an Americans with Disabilities Act complaint that CDCR was not accommodating him by giving him light duty work.  Defendant Curry spoke with plaintiff, advising him that culinary had light duty work available for him.  Plaintiff refused, according to defendant Curry, saying that culinary had no light duty work.  Curry Dec. ¶¶ 28-30.

- Plaintiff received an RVR on December 31, 2008, for refusing to work, of which he was found guilty but which was reduced to an administrative CDCR 115.[6]

- Plaintiff insists he was not refusing to work and that he was showing up in culinary, which he fruitlessly explained to defendants Johnston and Hayward.  Plaintiff's Dep. 172-173.

- Plaintiff filed an inmate appeal, Log No. FSP-O-09-00112, concerning his claim that the non-party SHO erroneously found him guilty of the December 31, 2008 RVR for refusing to work.  ECF No. 1-1 at 30-32.

- Plaintiff also filed Log No. FSP-09-00152, alleging retaliation by the non-party SHO in finding him guilty of the December 31, 2008 RVR.  The third level appeal response, dated June 23, 2009, was a denial.  The first level appeal response included an interview with defendant Hayward referencing the 12/10/08 CDC 128-B1 chrono from defendant Curry about plaintiff's refusal to work.  ECF No. 1 at 27; ECF No. 1-1 at 4-10, 15.

- Defendant Hayward declares that based on March 6, 2009 interview with plaintiff [regarding Log No. FSP-09-00152], she concluded that the guilty charge for refusing to work was appropriate.  Hayward Dec. ¶ 21.

- Defendant Dochow was aware of the instructions from medical limiting plaintiff's work to light duty, specifically, no bending or prolonged standing and no lifting over 20 lbs. and she declares she accommodated plaintiff's medical limitations by assigning duties consistent with the Comprehensive Accommodation chrono issued by medical.  Dochow Dec. ¶¶14-15, 19.

- On March 13, 2009, defendant Curry authored a general chrono to be placed in plaintiff's central file which stated that plaintiff "had been out of work continuously for the last 7 months.  During that time he has not work [sic] more than twenty days.  The culinary dept. has made every effort to accommodate Willis.  Willis has used his disability to exclude himself from every reasonable accommodation that the culinary department has

---

[6] Defendant Curry is named as the reporting employee in the 12/31/08 RVR which states: "On Wednesday, December 31, 2006, at approximately 1500 hours, I was advised by Appeals Coordinator Casey the Inmate Willis had filed an ADA appeal stating that we had not attempted to accommodate him with a light duty job after his injury in October.  I spoke to Inmate Willis . . .that same day to advised him that I had a light duty work assignment for him, and he could return to work that day for the evening meal.  Inmate Willis stated, 'He would not work in Culinary.  His job was not light duty.'  I advised Inmate Willis that there was light duty work available for him to perform.  Inmate Willis stated: 'I'm not coming back to work in the Culinary, I have Medical Issues.'  I again told Inmate Willis that there was light duty work for him.  Inmate Willis again stated, 'I'm not going to work in the Culinary.'  Inmate Willis was advised that he would receive a CDCR 115 for Refusing to Work.  . . ."

attempted.  Willis's complete lack of effort to participate in the program has placed a
serious burden on the staff as well as the inmate workers in the culinary department.
Willis's last lay-in was for 29 days allowing him to return on 3/13/09.  Again, Willis
turned in another lay-in for 4 days.  When I questioned Willis as to weather [sic] he could
return to work at that time he stated 'No I'll be returning to the doctor for another Lay-in
next week.  So they will have to remove me from the culinary now."  Curry Dec.,  Ex.
QQ.

• Plaintiff filed a CDC Form 1824, Reasonable Modification or Accommodation Request
dated March 18, 2009, Appeal Log No. FSP-26-09-10288 wherein plaintiff stated that he
was suffering substantial back pain from his job-related lower back injury, despite his
medical chrono restricting his standing, stooping or bending and limiting his lifting to 20
pounds or less and asserting that he had been forced to return to work on Feb. 8, 2009,
where he had had to bend and stand for hours and lift more than 20 pounds which had
caused him more stress and heart-related problems.  He was forced back to work despite
his claim that staff had violated his accommodation chrono which caused him a lay-in on
Feb. 6, 2009.  He also complained of having filed an appeal of the same matter on Feb. 13,
2009 but of still not having had any response.  ECF No.1 at 45, 49, 51.

• An FSP inmate job assignment history printout for plaintiff, dated July 17, 2009,
indicates he was assigned to the culinary (or kitchen) department # 2 D.R. Utility from
February 5, 2009 to April 16, 2009 and as a "3rd Watch bread wrapper" in culinary from
April 16, 2009 to July 1, 2009, after which he was assigned outside of culinary, as an
education clerk.  ECF No. 1 at 58, 65; MSJ, ECF No. 68-5, Ex. TT at 20.[7]

• According to CO Dochow, on March 24, 2009, she assigned plaintiff to serve vegetables
on Steam Line "B," which did not require lifting of over 20 pounds, and told him to work
for twenty minutes at a time and encouraged him to take any other breaks as needed.  She
told him he had to return to his assigned post once he was rested.  Plaintiff told her he
would work for thirty minutes and then would be done.  Plaintiff was not receptive to
counseling although she advised him he would receive a rules violation report (RVR) for
refusing to work.  After forty-five minutes of service, she states she noted plaintiff was not
at his assigned steam line position and failed to return to work for the rest of the evening.
She wrote a RVR for plaintiff's refusing to work, reviewed and approved by defendant
Curry.  ECF No. 1-1 at 38; MSJ, Dochow Dec. ¶¶ 17; Curry Dec. ¶ 33, ECF No. 68-5, Ex.
PP (3/24/09 RVR).[8]

---

[7] Although defendants posit as an undisputed fact that plaintiff was assigned to FSP culinary from
August 11, 2009 through September 2009, in a third level appeal response, dated October 13,
2009, for FSP-09-00323/IAB No. 0901624, it is noted that plaintiff had been assigned as an
education clerk/a full-time teacher's assistant in the computer-assisted instruction lab as of July 1,
2009.

[8] The RVR with defendant Dochow as the reporting employee and defendant Curry as the
reviewing supervisor, states: "On Tuesday, March 24, 2009, at approximately 1730 hours, while
performing my duties as #2 Dining Room Culinary Officer . . . I assigned Inmate Willis . . .to
serve the vegetables on Steam Line 'B.'  To accommodate Willis' medical limitations, I
instructed Inmate Willis to only work for approximately twenty minutes at a time.  In addition, I
encouraged Inmate Willis to take any other breaks as needed.  Prior to the beginning of the
evening meal, I advised Inmate Willis after he rested that he would have to return to his assigned
position, Inmate Willis then stated, "I'm only going to work for thirty (30) minutes and I am
done.  I'm not going back to the line."  I told Inmate Willis that if he did not return to the line
(continued…)

- Plaintiff has included an inmate appeal Log No. FSP-O-09-00259 initiated one day later, on March 25, 2009, claiming that upon his return to work from a lay-in on 3/20/09 defendants Curry and Dochow continued to disregard his health-forcing him to stand for long periods on the line serving. He also stated that on 3/23/09 Dochow told him to quit so she could write a 115. ECF No. 1-1 at 83-84.

- Plaintiff contends that defendant Dochow was coached and simply lied in her statement at the hearing on the RVR and that the accommodations, such as they were, were inadequate because when taking his breaks from standing there would only be boxes or crates available which would put him in a stooping or lying position. Plaintiff's Dep. 173-174; MSJ, ECF No. 68-5 at 9.

- Plaintiff was found guilty of this second RVR and assessed a thirty-day loss of credit on April 13, 2009 before a non-party hearing officer; defendant Hayward is noted as having reviewed the RVR on April 29, 2009. ECF No. 1 at 24; MSJ, Ex. PP.

  - Ultimately, on July 14, 2009, the Unit Classification Committee (UCC) reviewed plaintiff's file in absentia to determine credit restoration and elected to restore the thirty-day credit loss based on his having been discipline free for three months, reinstating plaintiff's expected release date of March 26, 2011. Hayward Dec. ¶ 31; Johnston Decl. ¶ 47, Ex.MM.

- Log No. FSP-09-00345/ IAB No. 0828315, third level appeal response dated September 9, 2009, appealing his March 24, 2009 RVR Log # 509-03-011: plaintiff contended that the non-party SHO failed to call two of his requested staff witnesses and that despite being precluded from long periods of standing and lifting more than 20 pounds, the "reporting employee ordered him to stand for long periods of time and then fabricated the circumstances of the incident." Appeal denied. ECF No. 1-1 at 36. Second level denial. ECF No. 1-1 at 39-40.

- In an appeal, Log No. FSP 09-00323, evidently initiated on April 15, 2009, plaintiff claimed that defendants Hayward and Johnston, among other misconduct, were not honoring his "new chrono," and that plaintiff's job in culinary violated his medical limitations and was causing irreparable harm to his "acute back injury." ECF No. 1 at 58-64; ECF No. 1-1 at 67-70; MSJ, Ex. 68-5, Ex. TT.[9]

- Defendant Curry stated that he became aware that plaintiff asked to be re-assigned to breadwrapping, describing this work as involving inmates separating bread slices and individually wrapping two slices to be distributed. Curry Dec. ¶ 24.

- Plaintiff has submitted documentation to show that he was assigned to "Bread Wrap" on April 16, 2009, on a job description form signed by plaintiff and (non-party) S. Ettlin, C.S.C. While plaintiff appears to have preferred that area to his prior kitchen assignment,

_____

after his break, that he could receive a CDCR 115 for Refusing to Work. Inmate Willis was not receptive to my counseling. Approximately 45 minutes prior to the completion of the evening meal, I observed the Inmate Willis was not at his post. Furthermore, Inmate Willis never returned to his assigned post for the remainder of the evening meal feeding." MSJ, ECF No. 68-5, Ex. PP.

[9] Plaintiff claimed at log no. FSP 09-00323 in a third level appeal request that defendants Johnston and Hayward were dishonestly denying they had received a 128-B1 removal request when they had received two 128-B1 removal requests, one on 12/10/08 and one on 6/29/09. ECF No. 1-1 at 69 (request dated July 27, 2009).

he evidently felt the work he was performing there was still in conflict with his medical chrono. ECF No. 1 at 31; ECF No. 1-1 at 26-27 (containing May 19, 2009 first level appeal response to Log No. FSP-O-09-00259).[10]

- In a "Notice of Classification Hearing," dated June 29, 2009, wherein it is stated that plaintiff is to appear before Classification Committee (ASAP) for "removal from program," Correctional Supervising Cook, S. Ettlin, Sr., wrote that plaintiff was "currently assigned to the PM Culinary in position MKSFX.351. Due to medical condition subject can not meet our expectations for this assignment. [] Therefore, we request [plaintiff] be brought before UCC for program re-evaluation and re-assignment from this department. Please contact Medical Department for specific medical information." ECF No. 1 at 30.

- Plaintiff was reassigned out of culinary and assigned as a clerk as of July 1, 2009. ECF No. 1 at 58, 65; MSJ, ECF No. 68-5, Ex. TT at 20.

- The second and third level appeal responses to Log No. FSP-O-09-00259 indicated that plaintiff wanted defendants Curry and Dochow to be investigated and that he still sought removal from his culinary assignment because as bread wrapper he was forced to stand for long periods and lift more than twenty pounds. ECF No. 1-1 at 19- 22.

- In an appeal Log No. FSP-09-00286/IAB No. 0828310, third level appeal denial dated October 5, 2009, noted that at the second level decision it was stated that "this is the third appeal" plaintiff filed in his efforts to be removed from his culinary job. The second level appeal was denied because plaintiff had not presented compelling evidence that his position as a bread wrapper was not light duty; the first level appeal response was a partial grant because plaintiff could be considered for transfer at the December 2009 annual review. ECF No. 1-1 at 47-51.

- Plaintiff was assigned to defendant Johnston's caseload and while not recalling precisely when, she acknowledges being notified of plaintiff's back injury. Johnston Dec., ECF No. 67-7, ¶¶ 4-5.

---

[10] In the unauthenticated document, the position is identified as MKSFX.351 and under "Specific Duties" the following, inter alia, is set forth:

"Perform any combination of the following duties to maintain kitchen work area and culinary equipment and utensils in a clean and orderly condition. Sweep and mop floors. Wash work tables, walls, refrigerators, and meat blocks. Remove and dispose of trash and garbage, placing it in designated containers. Steam-clean or hose out garbage cans. Wash pots, pans, and trays by hand. Scrape food from dirty dishes and wash them by hand or

machine. Transfer supplies and equipment between storage and work area by hand or use of hand truck. May set up dining tables. May wash and/or peel vegetables, using knife or peeling machine. May be known according to task performed as DISHWASHER, POT SCRUBBER, UTILITY WORKER, TABLE WIPER, SCULLERY WORKER, COOKS HELPER or DINING ROOM WORKER. You will perform any and all other duties that may be deem[] necessary or ordered by staff." ECF No. 1 at 31.

This job description, the court observes, does not appear to explain the specific duties of one assigned to "breadwrapping," but appears to be a general outline of culinary duties.

- Because they do not have the medical training to assess the requisite accommodations for inmates who complain of injury, defendants Curry and Johnston maintain that they follow all instructions in Comprehensive Accommodation chronos the medical department prepares.  Curry Dec. ¶ 19; Johnston Dec. ¶ 7.

- Defendants consider culinary a light-duty assignment, with the only heavy work requiring inmates to lift items that weigh more than 20 pounds being those duties which involve moving pans of food around or washing pots and pans.  Dochow Dec. ¶ 5, Curry Dec. ¶ 6, Vasquez Dec. ¶ 7.

- Defendant Curry declares that at FSP culinary is designated a light duty assignment because the work requires lifting at most 2 oz servings of bread, vegetables and other food.  Culinary can accommodate persons with disabilities or who cannot stand for long periods by giving the inmate a platform to sit on while preparing the food for service or while serving.  Curry Dec. ¶¶ 5, 21.

- Defendant Curry attests that he told plaintiff several times that his "Light Duty Chrono" restricted him from lifting anything heavy, but not from standing and serving food.  Curry Dec. ¶ 35.

- While the chrono dated December 1, 2008 did not reference specific limitations on standing, the chronos dated Feb. 11, 2009 and September 10, 2009 did limit plaintiff from standing for extended periods; however, it appears that plaintiff was no longer assigned to any culinary position as of July 1, 2009.

- Plaintiff has testified that there is no light duty in culinary and the main culinary supervisor (unnamed) confirmed that before plaintiff.  Plaintiff's Dep. at 41, 160-162.

- Defendant Johnston attests that she recalls plaintiff telling her that his work assignment in culinary was not accommodating his light duty restrictions as per his Comprehensive Accommodation chrono and that she thereafter spoke to defendant Curry who told her accommodations were being made for plaintiff by having him assigned to serving 2 oz servings of vegetables, by allowing him to sit when he felt tired and by giving him 20-minute breaks, but that plaintiff nevertheless refused to work either by sitting down and refusing to serve the food or by not coming to work.  Johnston Dec. ¶¶ 9-11.

- Defendant Johnston then informed plaintiff that culinary was accommodating his medical concerns as presented in his Comp. Accom. Chrono and he would continue working in culinary.  Johnston Dec. ¶ 12.

- Although plaintiff recounts that defendant Curry had told him he would have a job where he could stay in the same spot, sit when he needed to sit and stand when he needed to stand and instructed the staff to do the same, he disputes any representation that this accommodated his medical restrictions:

    Q.  So what you were doing prior to the injury is exactly what you went back to doing in the kitchen?
    A.  Same identical thing.  The only thing - - it intensified because I then started pushing.  I got - - start - - I then started - - ended up having to push these heavy carts up a slanted hill.  I didn't have to do that at first.  I had to start washing them down and pushing those up the hill, and then I moved into the bread room.  Bread became more standing and lifting and bending.  Like he said, it's a game.  It was a game to them.  It became a game.
    Q.  And that's what Curry was talking about, was the game?
    A.  Yeah.

27

Plaintiff's Dep.: 155:12-24; 156:4-17.

- From December 2008 through April 2009, both defendants Johnston and Hayward were aware of plaintiff's discontent with his position in culinary. Johnston Dec. ¶ 48; Hayward Dec. ¶ 32.

- Defendant Johnston declares that she spoke with plaintiff several times whom she states had a poor attitude toward correctional staff generally, advising him on ways to work with staff, but found him unreceptive to her suggestions. Johnston Dec. ¶ 48.

- FSP has a division entitled "Inmate Assignments" and this division assigns the inmate to a position once a vacancy opens up. An inmate cannot determine his job assignment. Plaintiff was assigned to work in culinary by Inmate Assignments when a job vacancy in culinary opened up. Johnston Dec. ¶¶ 15-17.

- Defendant Johnston declares that based on her review of plaintiff's chronos and discussions with defendant Curry, she believed plaintiff's medical conditions were being accommodated. Johnston Dec. ¶ 18, Ex. HHH.

- Defendant Johnston avers that an inmate can be removed from a job assignment 1) following a negative RVR in which he would lose credit or 2) if the medical department deems him medically incapable of performing duties with no loss of credit, but in this case plaintiff was restricted to light duty which accommodation she avers was made. Johnston Dec. ¶¶ 19-20, 23-24.

- Defendants Hayward and Johnston have declared that on several occasions they observed plaintiff walking around the facility showing no observable discomfort, limp or hobble. Hayward Dec. ¶ 34; Johnston Dec. ¶ 49.

- Defendant Hayward avers that plaintiff told her he wanted to start a disability claim while he was in prison because he had to get himself set up for disability when he was released from custody in March 2011, an averment plaintiff adamantly disputes. MSJ, Hayward Dec. ¶ 40; Opp. at 2.

- Defendant Hayward declares that Officer B. Bickford, on April 29, 2009, informed her that he had witnessed plaintiff playing basketball and running around for almost an hour showing no sign of a debilitating medical injury.[11] Hayward Dec. ¶ 33.

- Plaintiff filed an inmate appeal, FSP No. 09-00418, dated 5/19/09, calling the informational chrono written by non-party Bickford, inter alia, "false" and "deceptive." ECF No. 1 at 86-88; ECF No. 1-1 at 97-98; plaintiff's Dep. at 132.

- Plaintiff had UCC hearings on February 3, 2009, April 7, 2009 and August 25, 2009 chaired by defendant Hayward. Hayward Dec. ¶¶ 8-9, ECF No. 68-3, Exs. KK, LL, NN; Johnston Dec. ¶ 25.

---

[11] Notwithstanding what Officer Bickford may have told defendant Hayward, his chrono itself, wherein the officer reports having observed plaintiff walking and jogging in the yard without showing signs of physical discomfort, does not specifically mention plaintiff's having been seen playing basketball (see chrono, supra).

- Plaintiff had been found eligible for placement in the California Out-of-State Correctional Facility (COCF) program on 3/14/08, removed from the transfer list temporarily due to a medical appointment, and made eligible again on 7/25/08. MSJ, Hayward Dec. ¶ 14, Ex. KK; Johnston Dec. ¶ 32.

- Before the February 3rd 2009 UCC annual review, plaintiff conveyed to defendant Johnston that he was still seeking medical treatment for his back which was noted at the hearing. MSJ, Johnston Dec. ¶ 27, Ex. KK.

- At the February 3, 2009 hearing, plaintiff stated he did not want to be transferred out, citing family reasons, and the UCC also noted plaintiff's 12/01/08 accommodation chrono job restrictions. MSJ, Hayward Dec. ¶ 16, Ex. KK; Johnston Dec. ¶ 33.

- The UCC referred the case to the CSR recommending a non-adverse transfer to San Quentin or California Medical Facility "to facilitate family ties and resolve medical issues" and in the alternative recommended an non-adverse COCF transfer; plaintiff objected to the alternate COCF placement. MSJ, Hayward Dec. ¶ 17, Ex. KK; Johnston Dec. ¶ 34.

- At the UCC program review for plaintiff on April 7, 2009, because plaintiff's request for a job reassignment (FSP -08-1310) had been denied at the second level (it was granted in part to the extent plaintiff sought a light duty assignment but found that that could be provided in the culinary), the UCC could not accommodate plaintiff's request to be removed from culinary. Hayward Dec. ¶¶ 22, 27-29; Johnston Dec. ¶ 38, 45, Ex. LL.

- Because plaintiff had a pending RVR, the UCC informed him he could not be considered for transfer to a different facility at that time. Hayward Dec. ¶¶ 24-26, Ex. LL; Johnston Dec. ¶¶ 40-42.

- On August 25, 2009, at the UCC hearing, plaintiff asked for transfer to one of two facilities closer to his family and the UCC referred to CSR the recommendation for a non-adverse transfer to one of those facilities; the report again records plaintiff's back injury medical restrictions. Ex. NN.

        3.  Analysis

The core of the Eighth Amendment claim(s) against the custody defendants is that they refused to accommodate plaintiff's medical needs by appropriately limiting his work assignment. The Eighth Amendment definitively prohibits prison officials from intentionally interfering with a prescribed treatment of serious medical condition. Estelle, 429 U.S. at 104; see also, Wood v. Housewright, 900 F.2d at 1334 ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment'") (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Plaintiff vigorously contests the moving defendants' denials that they refused to accommodate his serious medical needs. However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

1  there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. at 247-248

2  (emphasis in original).  Although plaintiff here has vigorously disputed the adequacy of the

3  workplace accommodations he was afforded, he has failed to raise a genuine issue of fact that is

4  material to Eighth Amendment liability.

5              a.  *Defendants Curry, Dochow and Vasquez*

6         Very little of what defendants present goes undisputed by plaintiff, but very little that

7  plaintiff presents is material.  The numerous factual disputes that plaintiff emphasizes simply do

8  not go to the elements of Eight Amendment liability.  For example, plaintiff contends that

9  defendants Curry, Dochow and/or Vasquez refused to file an injury report for him until after he

10  filed an appeal, and disputes Curry's claim that plaintiff did not present him with the workers'

11  compensation employers report of occupational injury form until November 7, 2008.  Although

12  defendants do not dispute plaintiff's representation that his injury occurred on August 11, 2008,

13  plaintiff produces no evidence to counter defendant Dochow's representation that plaintiff did not

14  report his injury to her, as his work supervisor, on that date.  Moreover, the worker's

15  compensation form that plaintiff eventually submitted to the relevant state agency identifies mid-

16  October 2008 as the date his employer was made aware of his injury.  It is not in dispute that

17  plaintiff obtained the completed workers' compensation claim form he sought by early November

18  2008, and that he obtained his first medical comprehensive accommodation chrono (CAC)

19  restricting his bending and lifting at work, on December 1, 2008.  Even if there were a genuine

20  dispute whether defendant Curry was aware of plaintiff's need for an injury report before

21  October, the failure to expedite worker's compensation paperwork is not material to the deliberate

22  indifference analysis.

23         Plaintiff argues that he was deprived of medical treatment for his back injury because he

24  needed a worker's compensation claim before he could be accommodated, but the record

25  contradicts this assertion.  It is undisputed that plaintiff was permitted a medical lay-in during that

26  period, and plaintiff has stated that he was "redlined" or off work from shortly after his injury

27  until at least November 27, 2008 and possibly through December 31, 2008.  Defendant Curry

28  authored a CDC 128-B1 General Chrono dated December 10, 2008, reporting that plaintiff had

1    been out of work due to work-related injury for more than the 60 previous days.  On March 13,

2    2009, in a general chrono for plaintiff's central file, Curry stated that plaintiff had been out of

3    work for the previous seven months, during which period plaintiff had not worked for more than

4    twenty days total at his culinary job.  While no specific timeline is provided that shows which

5    days plaintiff was off work during the period from his August 11, 2008 injury until his

6    reassignment to a clerk position outside of the culinary department on July 1, 2009, nothing in the

7    record demonstrates that defendant Curry's reports of plaintiff's extended periods of absence

8    from work are inaccurate.

9           Plaintiff's challenge to the adequacy of his accommodation in the culinary unit is equally

10   unavailing.  Plaintiff claims that he was forced back to work on February 6, 2009, which supports

11   an inference that he had not been working up to that point.  He alleges that he was required to

12   pick up cake-filled pans and push hot carts up runways.  FAC at 4.  Plaintiff does not dispute that

13   he was granted a 29-day lay-in just prior to his March 13, 2009 return to work, or that he either

14   immediately sought (or had obtained) another lay-in as defendant Curry recounts.  As of April 16,

15   2009, plaintiff was permitted to work in the bread-wrapping section, a move plaintiff evidently

16   favored at first.  The undisputed facts show that he remained in that section of the culinary

17   department until his July 1, 2009 reassignment to the clerk position in the education department.

18          Plaintiff has alleged that on one occasion, May 3, 2009, defendant Vasquez kept forcing

19   him "to do harsh labor without breaks," telling him that "'once you came to prison you no longer

20   have rights.'"  But plaintiff has presented insufficient evidence to counter that of defendant

21   Vasquez that plaintiff's kitchen duties were outside of Vasquez' purview.  It is also apparent from

22   plaintiff's own exhibits that plaintiff's supervisor in the breadwrapping section was an S. Ettlin,

23   who is not a defendant in this action.  It is further undisputed that plaintiff had previously

24   mistakenly identified defendant Vasquez as a witness to his accident on August 11, 2008 -- a day

25   when defendant Vasquez was off duty and not present at his job.  While it is axiomatic that

26   disputes about material facts and credibility determinations must be resolved at trial and not on

27   summary judgment, Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1036 (9th Cir.

28   2005), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted

1    by the record, so that no reasonable jury could believe it, a court should not adopt that version of

2    the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S

3    372, 380 (2007).  Even if Vasquez made the offensive comment about prisoners having no rights,

4    no reasonable jury could believe that Vasquez had the authority to direct plaintiff's work.

5    Moreover, plaintiff's allegation that on a single occasion defendant Vasquez compelled him "to

6    do harsh labor without breaks" is insufficient to raise a genuine issue of material fact on the

7    question whether Vasquez subjectively knew of and disregarded an excessive risk to plaintiff's

8    health.  Toguchi v. Chung, 391 F.3d at 1057.  Accordingly, the court finds no material fact

9    remains at issue as to plaintiff's claims against defendant Vasquez.

10          Plaintiff vigorously disputes the defendants' characterization of culinary duty as a light

11   duty assignment, but this classification is not material to the Eighth Amendment analysis.  Even if

12   as a general rule culinary workers had to occasionally lift items that weigh more than 20 pounds,

13   it is undisputed that plaintiff's December 1, 2008 comprehensive accommodation chrono (CAC)

14   advised that plaintiff should not be assigned to a job requiring "frequent bending" or the lifting of

15   more than 20 pounds.  It is also not in dispute that defendant Curry informed plaintiff in early

16   December that there was a light duty assignment available for him in the FSP kitchen,

17   notwithstanding plaintiff's insistent contention that the assignment should not be considered

18   "light duty."  Because no medical limitation on standing was specified until plaintiff was issued

19   the February 11, 2009 CAC, Curry cannot have been deliberately indifferent for telling plaintiff

20   prior to that date that he was restricted from lifting heavy items but not precluded from standing

21   and serving food.

22          Defendants Curry and Dochow have presented evidence that plaintiff was given a light-

23   duty assignment in the kitchen that met the restrictions of the December 1, 2008 CAC and later

24   the February 11, 2008 CAC.  Defendant Dochow memorialized in her chrono of March 24, 2009

25   (and in the March 24, 2009 RVR Log # 509-03-011 she wrote charging plaintiff with refusing to

26   work) that she had assigned plaintiff to serve vegetables on Steam Line "B," for which lifting

27   more than 20 pounds was not required, telling plaintiff to work for twenty minutes at a time and

28   encouraging him to take any other breaks as needed.  Plaintiff evidently did not find this

1    accommodation suitable and accuses defendants of treating the accommodations as a game.

2    Plaintiff appealed the RVR and also has maintained that plaintiff Dochow fabricated the

3    circumstances of the RVR incident.  There is ample evidence that plaintiff filed repeated appeals

4    seeking assignment out of the culinary department and claiming that his medical restrictions were

5    not being accommodated.  However, plaintiff's evidence does not demonstrate that he actually

6    was forced to engage, and did in fact engage, in work activity that did not conform with the

7    CAC's.  Nor does he submit evidence that demonstrates his back injury was in fact reaggravated

8    by any actions of defendants Curry and Dochow.

9           Although at first plaintiff welcomed his placement in the breadwrapping section on April

10   16, 2009 because he evidently believed it better accommodated his medical needs, he

11   subsequently filed a grievance seeking removal from that position on grounds he was forced to

12   stand for long periods and lift more than twenty pounds.  ECF No. 1-1 at 19- 22.  Plaintiff's

13   original complaint is accompanied by a document dated June 29, 2009, in which a non-party

14   prison staff member sought plaintiff's removal from the breadwrapping assignment because

15   plaintiff's medical condition precluded him from doing the work called for in that section.  ECF

16   No. 1 at 30.  On or around July 1, 2009, plaintiff was reassigned outside of culinary.  The fact that

17   another correctional staff member came to believe that plaintiff was unable to perform the

18   breadwrapping job in light of his back injury does not demonstrate that the defendants were

19   deliberately indifferent to plaintiff's medical needs.  The record demonstrates that the named

20   defendants made reasonable efforts to comply with the medical accommodation chronos in

21   adjusting plaintiff's duties.  To the extent that they did not go far enough, such errors of judgment

22   do not amount to deliberate indifference in the absence of evidence that each defendant

23   subjectively knew that his actions subjected plaintiff to the unnecessary and wanton infliction of

24   pain.  Even if the defendants were motivated by personal hostility or wrongly disbelieved

25   plaintiff's reports of pain and incapacity, such proof would not support Eighth Amendment

26   liability.  To the contrary, a defendant who thought plaintiff was malingering cannot have acted

27   with knowledge that his actions risked excessive pain.

28          Plaintiff, who would bear the burden of proof at trial, has failed to identify evidence that

1   defendants Curry and Dochow, who have produced evidence of their efforts to accommodate

2   plaintiff's medical restrictions to a light-duty job assignment, subjectively knew of and

3   disregarded an excessive risk to plaintiff's health and safety.  Toguchi v. Chung, 391 F.3d at

4   1057.  Because plaintiff fails to make a showing sufficient to establish the existence of an element

5   essential to his case, Celotex Corp. v. Catrett, 477 U.S. at 322-23, summary judgment should be

6   granted to defendants Curry and Dochow as well as to defendant Vasquez.

7               b.  *Defendants Johnston and Hayward*

8        Plaintiff has alleged that defendants Johnston and Hayward showed a total disregard for

9   his safety and medical condition when they failed to remove him from his culinary assignment.

10  The amended complaint alleges that Corr. Counselor Johnston was aware of plaintiff's back

11  condition, refused to honor a CDC-128 notice for a removal from his kitchen job or to consider

12  his back condition, and directed culinary staff to give plaintiff a CDC-115 serious rules violation

13  report (RVR) and to fire him.  Plaintiff does not present evidence to counter defendant Johnston's

14  declaration that she was informed by defendant Curry that specific efforts had been taken to

15  assure plaintiff's light duty assignment in the culinary unit.  Moreover, plaintiff has not identified

16  evidence that could support a finding that defendant Johnston directed the kitchen staff to give

17  plaintiff either of the RVRs he received charging him with refusing to work.

18       Plaintiff alleges he spoke with defendant Captain Hayward about his injury and the

19  "removal order" but she refused, on March 6, 2009 to honor the chrono and CDC 128 for a new

20  light duty job assignment.  The "notice of removal" or "removal order" to which plaintiff refers

21  appears be the chrono written by defendant Curry on December 10, 2008.  This chrono

22  documents the conversation Curry had with plaintiff after plaintiff was medically released for

23  light duty work after being away from his job for two months.  According to the chrono, Curry

24  advised plaintiff that there was light duty work available for him in the culinary, plaintiff refused

25  to return to work on medical grounds, and Curry cautioned plaintiff that he would receive an

26  RVR if he refused to work.  The chrono ends by requesting plaintiff's removal from his current

27  job.  It is evident from the circumstances that the request for reassignment was made by defendant

28  Curry out of frustration with plaintiff's apparent refusal to return to work despite light duty

34

1    accommodation, and not because plaintiff's medical condition dictated a reassignment.

2    Accordingly, the failure of defendants Johnston and/or Hayward to act on the requests (assuming

3    their authority to do so) cannot have constituted deliberate indifference to a serious medical need.

4          Plaintiff contends that he was found guilty for refusing to work even though defendants

5    knew that he was physically incapable of working in a job other than one with light duty.  He

6    further argues that he should not have been found guilty on December 31, 2008 of refusing to

7    work, because he was showing up for work.  Plaintiff attempts to create factual disputes regarding

8    his presence in the kitchen, and whether he was being asked to do work beyond his capacity or in

9    violation of the CACs, all in relation to the validity of the RVR proceedings.  These disputes are

10   not material to Eighth Amendment liability.  In any case, it is undisputed that neither Johnston

11   nor Hayward served as the hearing officer at either of plaintiff's RVR hearings related to this

12   matter.

13         Plaintiff also attempts to raise a factual dispute regarding the accuracy of Officer

14   Bickford's documented observation that plaintiff's movement on the prison yard was unhampered

15   and gave no indication of pain.  Plaintiff appears to be most upset because of his perception that

16   he was being spied on.  In his administrative grievance of this issue, plaintiff asserted that he had

17   not been on the yard nearly as often as Officer Bickford stated and that there was not time to walk

18   up and down the yard for hours as Officer Bickford reported.  Neither in his grievance or in

19   opposition to summary judgment does plaintiff indicate that his movement on the yard was

20   actually restricted by his back condition; he argues rather that observations of his movements by

21   non-medical personnel are irrelevant.  Plaintiff's opposition makes no reference to defendant

22   Hayward's declaration that Officer Bickford told her that that he had seen plaintiff playing

23   basketball.  The accuracy of Officer Bickford's reports are not material to defendants' Eighth

24   Amendment liability.  The fact of the reports, however, suggests that defendants were

25   subjectively aware of evidence of malingering and not that they were subjectively aware of an

26   excessive risk to plaintiff's health.

27         In his opposition, as defendants observe, plaintiff does not produce evidence to dispute

28   defendants' exhibits and declarations, but primarily attacks the credibility of the individual

1   defendants.  Reply, ECF No. 5 at 9.  This strategy will not suffice to defeat summary judgment.

2   See  Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987) ("[d]iscredited

3   testimony is not a sufficient basis for drawing an affirmative contrary conclusion").  In light of

4   plaintiff's pro se status and deficient opposition, the court has reviewed the record of plaintiff's

5   previously submitted (albeit unauthenticated) exhibits and reviewed his deposition.  At most,

6   plaintiff has shown that he consistently disagreed with his retention in the culinary job and found

7   any effort by defendants to modify the job to conform with his medical restrictions completely

8   deficient.

9          Under Rule 56 the court draws all reasonable inferences in favor of plaintiff, the non-

10  moving party, to the extent they are supported by the evidence.  Walls, 653 F.3d at 966.

11  Inferences that are unsupported by evidence, or contradicted by the record, need not and will not

12  be drawn, however.  The undersigned finds that the record presented here could not lead a

13  reasonable juror to find for plaintiff on his claims of deliberate indifference by defendants

14  Johnston and Hayward.  Matsushita, 475 U.S. at 587.

15                  c.  *Qualified Immunity*

16         Because the court concludes that no genuine issue of material fact exists as to whether any

17  of the defendants were deliberately indifferent to a serious medical condition suffered by plaintiff,

18  defendants' argument that they are entitled to qualified immunity need not be reached.

19                                CONCLUSION

20         For all the reasons set forth above, IT IS RECOMMENDED that defendants' motion for

21  summary judgment (ECF No. 67) be granted, judgment be entered for defendants, and this case

22  be closed.

23         These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Local Rule 304(b).  **In light of the**

27  **exigencies of the court's calendar, there will be no extension of time to file objections.**  Such

28  a document should be captioned "Objections to Magistrate Judge's Findings and

36

Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE